609 So.2d 809 (1992)
ST. PAUL FIRE & MARINE INSURANCE COMPANY
v.
E.R. SMITH, Jr. d/b/a E.R. Smith Electrical Contractor, et al.
No. 92-C-1043.
Supreme Court of Louisiana.
November 30, 1992.
Rehearing Denied February 4, 1993.
*810 Woodrow W. Wyatt, Brian L. Williams, Baton Rouge, for applicant.
Ronald F. DeFrances, Warren D. Ponder, Baton Rouge, Teresa C. Leyva, Kristi L. Stroebel, Sutherland, Juge, Horack & Dwyer, New Orleans, for respondents.
Stephen E. Broyles, Baton Rouge, for Earl Brooks (Amicus Curiae).
HALL, Justice.
This case raises the question of whether the 1989 amendment to LSA-R.S. 23:1103, effective January 1, 1990, granting an employer first payment for worker's compensation paid out of any damages recovered by the employee from a third party, regardless of how the damages are classified and whether the damages include compensation for losses other than medical expenses or lost wages, should be applied retroactively. The court of appeal, reversing the district court, classified the amendment as interpretive legislation and thus found it applies retroactively. Reversing the court of appeal, we conclude that the amendment is substantive legislation, changing the existing law as interpreted in Brooks v. Chicola, 514 So.2d 7 (La.1987), and Fontenot v. Hanover Ins. Co., 385 So.2d 238 (La.1980), and thus hold that it applies prospectively only.

I.
On May 19, 1988, plaintiff, Wayne Wagner, sustained serious injuries during his employment with Coastal Contractors, Inc. ("Coastal"), when a truck driven by Egles J. Hebert, and owned by Hebert's employer, E.R. Smith, Jr. d/b/a E.R. Smith Electrical Contractor ("Smith"), made an allegedly improper lane change into a closed road construction zone and ran into equipment owned by Coastal. Wagner sued the driver of the truck, Hebert; Hebert's employer, Smith; Smith's insurer, Boston Old Colony Insurance Co. ("Boston"); and Hebert's unnamed liability insurer in tort. Coastal's worker's compensation carrier, St. Paul Fire & Marine Insurance Company ("St. Paul"), intervened seeking reimbursement of compensation and medical expenses paid as a result of the accident.[1]
Boston invoked a concursus proceeding, depositing the available policy limits ($983,151.96, including accrued legal interest) *811 into the registry of the court.[2] In response, both Wagner and St. Paul sought a declaratory judgment on the apportionment of the funds. The district court rendered judgment in Wagner's favor; it found that Wagner was to receive all sums awarded him for "non-economic damages" arising out of the accident in preference to St. Paul receiving any reimbursement for past compensation paid, or credit for future compensation that may become due, under the Louisiana Worker's Compensation Law.
St. Paul suspensively appealed.[3] On appeal, St. Paul contended that LSA-R.S. 23:1103 mandates that the employer or its worker's compensation insurer be given a preference in the apportionment of damages recovered in suits against third parties regardless of the nomenclature used in the judgment to describe damages and that the district court thus erred in granting the employee, Wagner, the preference. Agreeing with St. Paul, the court of appeal reversed the district court. In so doing, the court reasoned that the 1989 amendment to LSA-R.S. 23:1103, providing employers the right to reimbursement from all damages awarded the employee and overruling prior jurisprudence prohibiting such reimbursement from the employee's general damage award, was interpretive and thus was retroactive. Applying LSA-R.S. 23:1103, as amended, the court held that St. Paul is entitled to a preference for reimbursement of any worker's compensation benefits actually paid before Wagner receives payment for any damages and is also entitled to a credit for any future compensation owed.[4]St. Paul Fire & Marine Ins. Co. v. Smith, 596 So.2d 272 (La.App. 3d Cir.1992). We granted Wagner's writ application. 600 So.2d 593 (La.1992).

II.
At the time of the accident in question, LSA-R.S. 23:1103 provided:
In the event that the employer or the employee or his dependent becomes party plaintiff in a suit against a third person, as provided in R.S. 23:1102, and damages are recovered, such damages shall be so apportioned in the judgment that the claim of the employer for the compensation actually paid shall take precedence over that of the injured employee or his dependent; and if the damages are not sufficient or are sufficient only to reimburse the employer for the compensation which he has actually paid, such damages shall be assessed solely in his favor; but if the damages are more than sufficient to so reimburse the employer, the excess shall be assessed in favor of the injured employee or his dependent, and upon payment thereof to the employee or his dependent, the liability of the employer for compensation shall cease for such part of the compensation due, computed at six per cent per *812 annum, and shall be satisfied by such payment.
No compromise with such third person by either the employer or the injured employee or his dependent shall be binding upon or affect the rights of the others unless assented to by him.
Construing pre-amendment LSA-R.S. 23:1103, we held in Fontenot, supra, that the statute provides a preference for the employer who seeks reimbursement of medical expenses paid only on that part of the employee's award itemized as medical expenses. This construction, we found, was warranted by the underlying policy of the apportionment scheme between employees and employers in suits against third parties that the employee not be doubly compensated for the same element of damages. 385 So.2d at 240 (citing Roberson v. Fontenot Petroleum Co., Inc., 322 So.2d 287 (La.App. 1st Cir.1975), writ denied, 325 So.2d 277 (La.1976)). More particularly, we observed that "[i]t does not appear that the legislature intended for the employer to be reimbursed from the employee's award for items which the employee has not recovered from the third person." 385 So.2d at 240 (collecting cases).
Following this court's lead, the appellate courts confined an intervening employer's reimbursement rights accordingly.[5] Indeed, Fontenot was extended to apply to future medical expenses. Landaiche v. Lou-Con, 461 So.2d 1107, 1117 (La.App. 5th Cir.1984) (holding "that future medical expenses are to be credited only against the allowance for future medical expenses"). Moreover, pre-Brooks, at least two lower courts extended Fontenot to weekly compensation benefits: Lagraize v. Bickham, 391 So.2d 1185, 1192 (La.App. 4th Cir.1980) (on rehearing), and Price v. Mitchell Const. Co., Inc., 482 So.2d 869 (La.App.2d Cir.), writ denied, 484 So.2d 671 (La.1986). The Lagraize court reasoned that while Fontenot only addressed medical expenses, Fontenot's rationale "clearly contemplates reimbursement for weekly compensation benefits." 391 So.2d at 1192. Paraphrasing Fontenot, the LaGraize court found that "the compensation statute `does not require an employee to reimburse out of his award for pain and suffering [the weekly benefits for wage-replacement] which [wage-replacement] he failed to recover from a third party tortfeasor.'" Id. Likewise, the Price court limited reimbursement for weekly compensation benefits to the employee's lost wages award.
The extension of the Fontenot rationale to weekly compensation benefits, however, was not uniformly followed and eventually lead to a split in the circuits on the issue of whether Fontenot could be read as encompassing not only medical benefits, but also weekly compensation benefits. See Stewart v. Hanover Ins. Co., 416 So.2d 286 (La.App. 3d Cir.), writ denied, 421 So.2d 907 (La.1982). In Brooks v. Chicola, 514 So.2d 7 (La.1987), we resolved the conflict, finding the same rationale applies to both types of benefits; "reimbursement to the compensation insurer ... must necessarily be limited only to the damage awards for loss of earnings and medical expenses." 514 So.2d at 13.[6] We further *813 found that "[i]t necessarily follows that credit for future compensation likewise must be limited to the award for future loss of earnings." 514 So.2d at 14. Since Brooks, numerous state appellate courts, as well as a few federal courts, have applied this limitation.[7]
In 1989, two years after Brooks, supra, and nine years after Fontenot, supra, as part of a comprehensive revision of the worker's compensation law by Act 454 of 1989, the legislature amended LSA-R.S. 23:1103, subdividing it and adding two significant new provisions, one of which is the object of the instant dispute, LSA-R.S. 23:1103(B),[8] which provides:
The claim of the employer shall be satisfied in the manner described above from the first dollar of the judgment without regard to how the damages have been itemized or classified by the judge or jury. Such first dollar satisfaction shall be paid from the entire judgment, regardless of whether the judgment includes compensation for losses other than medical expenses and lost wages.
The above provision was an obvious legislative attempt to change the law as construed by this court in Brooks and Fontenot. This provision eliminates the exclusion of the employee's general damage award from the employer's right of reimbursement by prohibiting the employer's preference from being defeated by the nomenclature used to describe the award and by expressly making the employee's entire *814 award subject to "dollar for dollar" reimbursement of the employer. A noted commentator expressed the view that this provision was designed "properly to restore the law to the reading which had been given to it prior to the Brooks decision." Malone and Johnson, 14 La.Civil Law Treatise: Workers' Compensation § 369 (1991 Supp.). This commentator noted elsewhere that "[u]ntil [the Brooks] decision, our courts had properly permitted reimbursement from the award regardless of the labels that might have been attached to the award." Johnson, Worker's Compensation, 50 La.L.Rev. 391, 399 (1989).
Adopting this commentator's view of the effect of this amendment as merely restoring the law to its pre-Brooks state, the court of appeal classified the amendment as interpretive and thus retroactive, opining:
The legislative amendment of R.S. 23:1103(B) reflects the economic principles and rationale of the worker's compensation scheme. This "compensation principle", which is based upon a trade-off between an uncertain (though possible higher) tort suit award and guaranteed immediate compensation payments, is thoroughly discussed in Malone and Johnson, 13 La.Civil Law Treatise: Workers' Compensation § 32-§ 34 (1980). Therefore, the 1989 amendment of LSA-R.S. 23:1103(B) was interpretive legislation. The general rule is that interpretive laws generally apply both prospectively and retroactively. LSA-C.C. art. 6, Official Comment (c).
In so doing, the court of appeal quoted heavily from two of this court's opinions that address interpretive legislation: Gulf Oil Corp. v. State Mineral Board, 317 So.2d 576, 590 (La.1974), and Ardoin v. Hartford Accident & Indemnity Co., 360 So.2d 1331, 1338 (La.1978).[9]
The Third Circuit has reached the same result in two other cases.
First, in Crowley v. City of Lafayette, 602 So.2d 40, 44 (La.App. 3rd Cir.), writ granted, 601 So.2d 663 (La.1992), consolidated with the instant case for oral argument and also decided this day, the Third Circuit opined:
The legislature obviously did not agree with the supreme court's interpretation in Brooks, supra, because the amendment to La.R.S. 23:1103 legislatively overruled Brooks, supra. This amendment allowed the legislature to tell the courts how La.R.S. 23:1103 should be interpreted thus, it clarified and interpreted an existing law. This amendment did not create a new right or obligation; it simply interpreted La.R.S. 23:1103.
Second, in Spears v. Broussard, 602 So.2d 235 (La.App. 3d Cir.1992), the Third Circuit cited its earlier holdings in St. Paul and Crowley and gave the following additional rationale for retroactively applying this amendment:
The legislature obviously felt the Brooks application was the result of an incorrect interpretation of the statute as it enacted the amendment soon afterwards....
The 1989 amendment clarified what the legislature meant by "damages" [in the statute as originally enacted]....
The amendment tells the courts that the legislature never intended a distinction between general and work related damages. The employer always had a right to recover from the first dollar of the damage award and the employee always had to wait his turn for the excess, if any. From this perspective, nothing of substantive value is taken from the employee as it was never intended he have any preference over his employer in the award.
602 So.2d at 237.
A contrary position was voiced by Chief Judge Domengeaux in his concurrence in Spears and in his dissent in Crowley. Particularly, he explains what he perceives as the fallacy in the Third Circuit's holdings in the above trilogy of cases: "[t]he `bottom line' is that this statute affects substantive rights by overruling, not just Brooks, but also Fontenot and its progeny.... Fontenot had become settled law many years before [the plaintiff's] accident and before *815 the Brooks case was decided. Although the 1989 amendment clearly overruled Brooks and Fontenot, I find no clear intention that this amendment should be applied retroactively, particularly in light of the long line of jurisprudence that has consistently followed Fontenot and Brooks." Crowley, 602 So.2d at 47-48. He also notes that the Third Circuit's reliance on the fact that the amendment came only two years post-Brooks to imply a legislative intent of retroactive application is misplaced. He suggests that the proper approach is to apply two generally accepted principles: (1) that no statute is retroactive unless expressly stated, and (2) that the applicable worker's compensation law is that which is in effect at the time of the injury. In support of this position, he cites the Fourth's Circuit's holding in Harris v. Ballanshaw, 576 So.2d 602 (La.App. 4th Cir.1991), and the federal court's holding in Harrison v. Otis Elevator Co., 935 F.2d 714 (5th Cir.1991).
Harris, supra, refused to apply the amendment to a compromise agreement confected before the January 1, 1990, effective date, reasoning that "under the direction of its enabling act, LSA-R.S. 23:1103(B) does not apply to the funds Harris received in 1989 from the third party tortfeasors in return for their release." 576 So.2d at 604. Similarly, citing Harris, supra, the federal court in Harrison, supra, held that "[t]he amendment at issue is substantive in nature, affecting vested rights" and thus should be applied prospectively only. 935 F.2d at 719; see also Daugherty v. Cross Marine, Inc., 598 So.2d 595, 599 (La.App. 4th Cir.1992) (citing Harrison and Harris in support of finding that amendment is substantive and thus not retroactive).
More recently, the First Circuit in Roadrunner Motor Rebuilders, Inc. v. Ryan, 603 So.2d 214 (La.App. 1st Cir.1992), joined the Fourth Circuit and the federal court in holding that the amendment is substantive and thus to be prospectively applied.[10] The First Circuit reasoned:

Brooks v. Chicola resolved a conflict among the Louisiana appellate courts and held that compensation carriers had no right to reimbursement from an employee's damage award for pain and suffering. Prior to the 1989 amendment of LSA-R.S. 23:1103, an employee's recovery for pain and suffering was not subject to the reimbursement claims of the employer. The amendment purports to give the employer the right to reimbursement from the employee's damage award, regardless of whether the award is classified as an award for pain and suffering. The amendment gives the employer and the compensation carrier the right of reimbursement to funds to which they were previously not entitled. The amendment takes from the employee a right to keep damages for pain and suffering free of the claims for reimbursement by the compensation carrier and the employer. Because the amendment confers new rights and destroys existing rights, it is substantive and cannot be given retroactive effect.
603 So.2d at 218.
We granted writs in this case primarily to resolve this conflict in the circuits. For the reasons that follow, we find the amendment effects a substantive change in the law and thus is to be applied prospectively only.

III.
With the before and after picture of the statute in mind, we turn to the issue before us of whether this change in the law as previously interpreted by the courts can be applied retroactively to rights and duties arising out of events which occurred prior to the change in the law. In this case, the relevant event (plaintiff's injury) occurred before the January 1, 1990, effective date of Act 454 of 1989, which amended, among other sections, LSA-R.S. 23:1103 by adding *816 subsection (B). Thus, we must determine whether that amendment to LSA-R.S. 23:1103 is to be given retroactive effect.
As the legislature is free, within constitutional confines,[11] to give its enactments retrospective effect, the question of the temporal effect to be given an enactment is, in the first instance, one of statutory construction. As we are addressing the temporal effect of an amendment to a section of the Revised Statutes, LSA-R.S. 1:2 is the governing rule of statutory construction; it provides that "[n]o Section of the Revised Statutes is retroactive unless it is expressly so stated." LSA-R.S. 1:2, however, has been construed as co-extensive with LSA-C.C. Art. 6. Pierce v. Hobart Corp., 939 F.2d 1305, 1308 n. 3 (5th Cir.1991) (citing Socorro v. New Orleans, 579 So.2d 931 (La.1991); and Lott v. Haley, 370 So.2d 521 (La.1979)).[12] LSA-C.C. Art. 6 codifies the general rule against retroactive application of legislative enactments, and the exceptions jurisprudentially engrafted onto it, providing:
In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretive laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary.[13]
Although LSA-C.C. Art. 6 and LSA-R.S. 1:2 superficially appear to conflict,[14] this conflict is apparent, not real, as the jurisprudence has construed the general proscription against retrospective effect of laws, codified in LSA-R.S. 1:2 and LSA-C.C. Art. 6 (formerly Art. 8), as applying only to substantive, as opposed to procedural or interpretive, laws. Pierce, supra; Lott, supra.
In Cole v. Celotex Corp., 599 So.2d 1058 (La.1992), we outlined a two-step analysis for resolving this statutory construction question under LSA-C.C. Art. 6:
First, we must ascertain whether in the enactment the legislature expressed its intent regarding retroactive or prospective application. If the legislature did so, our inquiry is at an end. If the legislature did not, we must classify the enactment as substantive, procedural or interpretive.
599 So.2d at 1063.
The first step is determining whether the legislature expressly provided for retroactive application; this step is resolved by examining the specific language contained *817 in the act. See Jones, Legislative Checklist: Elements of a Bill, 35 La.Bar J. 349, 351 (1988) (legislature has the discretionary authority to include in a bill a prospective or retrospective application clause). Our decision in Cole illustrates such a clear expression of legislative intent. There, we found that the legislature's inclusion of a clause providing that "`[t]he provisions of this act shall not apply to claims arising from events that occurred prior to the time this act becomes effective,'" was a clear legislative expression of an intent that the comparative negligence law be applied prospectively only. 599 So.2d at 1064-65.
In contrast, Act 454 of 1989 contains no clear and unmistakable expression of legislative intent regarding retrospective or prospective application, providing simply in Section 13 of the Act that "[t]his Act shall become effective on January 1, 1990." That the Act includes a January 1, 1990, delayed effective date,[15] however, is significant. As we observed in Cole, supra, "the mere inclusion of this type of [delayed effective date] provision in a legislative enactment evidences a clear legislative intent that the enactment be given prospective application. 1A Sutherland Stat. Const. § 20.24 (4th Ed.1985)." 599 So.2d at 1064-65 n. 19 (collecting cases); see also F. McCaffrey, Statutory Construction § 65 (1953) ("postponement of the effective date of a statute is said to constitute some evidence that the Legislature never intended it to be retroactive"). Thus, the legislature's selection of a delayed effective date evidences some, albeit inconclusive, intent of prospective application.
Absent a conclusive expression of legislative intent, we must proceed to classify the amendment pursuant to LSA-C.C. Art. 6 as either substantive, procedural or interpretive.[16] Briefly stated, the parties contentions on this issue are as follows. The worker's compensation insurer, supported by the court of appeal, argues that the amendment to LSA-R.S. 23:1103(B) fits squarely within the interpretive law category and thus is retroactive. Conversely, the employee, supported by the district court, argues that the amendment is substantive as it takes away his right to retain his general damage award free and clear of the employer's reimbursement preference and it gives to the employer the right to reimbursement from all damages. Giving retroactive effect to such an amendment, the employee urges, would amount to an unconstitutional divestiture of his vested right to recover general damages. Neither party contends that the amendment at issue is merely procedural; hence, the narrow inquiry before us is whether the amendment is interpretive and thus retroactive, or substantive and thus prospective.

IV.
Substantive laws either establish new rules, rights, and duties or change existing ones. Interpretive laws, on the other hand, do not create new rules, but merely establish the meaning that the interpretive statute had from the time of its enactment. It is the original statute, not the interpretive one, that establishes the rights and duties. Ardoin v. Hartford Accident & Indemnity Co., 360 So.2d 1331, 1338 (La.1978) (citing 1 M. Planiol, Civil Law Treatise Nos. 249-252 (La.St.L.Inst. Transl.1959) ("Planiol"), and A. Yiannopoulos, Louisiana Civil Law System 68 (1977) ("Civil Law System")).
When an existing law is not clear, a subsequent statute clarifying or explaining the law may be regarded as interpretive, and the interpretive statute may be given retrospective effect because it does not change, but merely clarifies, pre-existing law. Gulf Oil Corp. v. State Mineral *818 Board, 317 So.2d 576, 590 (La.1974); Ardoin, supra. Planiol explains the exception for interpretive laws as follows:
Interpretive laws do not establish new rules. What they do is to determine the meaning of existing laws. It follows that they may apply to facts previous to their promulgation. Their retroactivity is but apparent, because it is not the interpretive law, but the original law, which applies.
Planiol, supra at § 251.
The foundation Louisiana case regarding interpretive legislation is Gulf Oil, supra. Yet, as this court acknowledged, the discussion in that case was dicta; the issue of whether the legislation in question was interpretive was neither presented, nor decided.[17] We simply gave the new statute weight in deciding that our interpretation of a prior statute in California Co. v. Price, 225 La. 706, 74 So.2d 1 (1953), was wrong and thus overruled Price. In so doing, however, we noted that we were overruling a "short line of clearly erroneous jurisprudence"namely, our erroneous interpretation of the prior statute in Price, supraand that there was little likelihood of public reliance on our Price decision in light of the passage of only eleven days from the date of the finality of that decision and the legislature's enactment overruling it. 317 So.2d at 591.
In Gulf Oil, supra, we posed, but did not resolve, the interesting issue of whether interpretive legislation violates the constitutional separation of powers principle. In this regard, commentators have noted that "[u]ncritical expressions[18] may be found in judicial decisions that interpretive laws are an improper exercise of legislative power and contrary to the principle of the separation of powers." Civil Law System, supra at 68; see also H. Alston Johnson, LegislationProcedure and Interpretation, Developments in the Law, 1983-84, 45 La. L.Rev. 341, 344 (1984) (questioning the validity of the exception to the prospectivity presumption for interpretive laws "because an `interpretive' enactment begins to give the legislature judicial power"). This problem apparently arises because interpretive legislation is sometimes said to legislatively "overrule" a prior judicial decision.[19]
To illustrate, in Barron v. State, Dept. of Public Safety License Control & Driver Improvement Division, 397 So.2d 29 (La. App. 2d Cir.), writ denied, 401 So.2d 1188 (La.1981),[20] the Second Circuit held that an act changing the law as construed a year earlier by this court in Smith v. State, Through Dept. of Public Safety, 366 So.2d 1318 (La.1978), was "a classic example of interpretive legislation which did not create a new rule but simply established the meaning that the interpreted statute, La. R.S. 32:1479, had from the time of its enactment." 397 So.2d at 31; see also Wheeler v. State, Dept. of Public Safety, License Control and Drivers Improvement Division, 377 So.2d 539, 542-43 n. 6 (La.App. 3d Cir.1979).[21] The rationale is that "[g]enerally, *819 a legislative overruling of a judicial decision does not change the law, but rather a particular judicial interpretation of it, and re-establishes or clarifies what was supposed to be the true meaning of the interpreted law." Symeonides, Property, 46 La.L.Rev. 655, 691 (1986) (emphasis in original).
Perhaps it is the use of this expression "legislatively overrule" that clouds the issue. To say that a judicial decision was "legislatively overruled" is a descriptive or shorthand, but not literal, expression for the legislature changing the law as previously interpreted by the court. It is this interplay between the legislative and judicial branches that raises the separation of powers issue which we note, but do not resolve, as we find the amendment to LSA-R.S. 23:1103(B) is not interpretive. Nonetheless, we quote the following suggestion for harmonizing this interplay between legislative and judicial action and for distinguishing interpretive from substantive legislation:
[T]he principle of separation of powers leaves no room for the adjudication of cases by the legislature, and this may be the true holding of certain Louisiana decisions. [See, e.g., State Licensing Bd. for Contractors v. State Civil Service Comm'n, 240 La. 331, 123 So.2d 76 (1960)]. The principle of separation of powers does not exclude the authority of the legislature to enact clearly interpretive laws, clarifying the meaning of previously enacted texts outside the context of litigation. Of course, it is a different matter when the legislature actually amends previously enacted legislation by laws designated as interpretive. This again may be an improper exercise of power tending to attribute, contrary to constitutional guarantees, retroactive effect to new legislation.
Yiannopoulos, Validity of Patents Covering Navigable WaterbottomsAct 62 of 1912, Price, Carter, and All That, 32 La. L.Rev. 1, 16 (1971) (emphasis supplied); see also Planiol, supra at § 251 (cautioning that "the lawmaker may misuse his right of interpretation in giving the name `interpretive law' to laws which contain new provisions.")[22]
The suggested distinction between interpretive legislation "clarifying," and substantive legislation "amending" or "changing," existing law is an obscure one. There is "no bright line between substantive laws which change existing standards and interpretive laws which change existing standards by redefining and returning to their ostensible `original' meaning." Pierce v. Hobart Corp., 939 F.2d 1305, 1309 (5th Cir.1991); see also Coates v. Owens-Corning Fiberglas Corp., 444 So.2d 788, 790 (La.App. 4th Cir.1984). In the same vein, we have described the line between this intention of the lawmaker to "clarify" existing laws and the enactment of new substantive provisions as tenuous and noted that this exception "may result in eroding the principle of non-retroactivity." Dripps v. Dripps, 366 So.2d 544 (La. 1978). Nonetheless, the jurisprudence has recognized that interpretive laws play a significant role in our civil law system, "provid[ing] the Legislature with the opportunity to pronounce the `correct' interpretation to be given to existing laws." Pierce, supra. Even interpretive legislation, however, cannot operate retroactively to disturb vested rights; "[t]he Legislature cannot retroactively affect, under the guise of interpretive legislation, substantive rights vested under earlier unambiguous *820 legislation." Terrebonne v. South Lafourche Tidal Control Levee Dist., 445 So.2d 1221, 1225 (La.1984).
We have defined interpretive legislation as that which "determine[s] the meaning of existing laws." Ardoin, supra (quoting Civil Law Systems, supra (emphasis supplied)). Under this definition, we find that the amendment to LSA-R.S. 23:1103(B) was not interpretive. Before January 1, 1990, "existing" Louisiana law as interpreted and construed by the state's highest court unequivocally recognized the employee's right to retain his general damage award by excepting that award from the employer's preferential right to reimbursement. Hence, the change in the law is clearly substantive in that it significantly alters the respective rights of the injured employee and the employer (or compensation insurer). Under LSA-C.C. Art. 6 and LSA-R.S. 1:2, and a consistent line of cases, such a substantive change in the law cannot be applied retroactively. Gilboy v. American Tobacco Co., 582 So.2d 1263, 1265 (La.1991); Graham v. Sequoya Corp., 478 So.2d 1223, 1225-26 (La.1985); Lott v. Haley, 370 So.2d 521 (La.1979); Ardoin v. Hartford Accident & Indemnity Co., 360 So.2d 1331, 1338 (La.1978); Commercial Credit Claims Services, Inc. v. Richardson, 454 So.2d 177 (La.App. 1st Cir.1984); Rico v. Vangundy, 461 So.2d 458, 462 (La. App. 5th Cir.1984); Frito-Lay, Inc. v. Wapco Constructors, Inc., 520 F.Supp. 186, 189-90 (M.D.La.1981) (collecting cases). We reach this result for several reasons detailed below.
First, the amendment to LSA-R.S. 23:1103(B), contrary to the Third Circuit's suggestion, was not a "prompt" legislative response to Brooks; instead, the legislature's response was a delayed one, coming over two years after Brooks and almost a decade after Fontenot. Simply because an amendment can somehow be connected with a prior judicial decision does not ipso facto render it interpretive legislation. Thus, we find the Third Circuit's reliance on the fact that the amendment came two years after the Brooks decision to infer a legislative intent to "clarify" the existing law misplaced. See Crowley, 602 So.2d at 48 (dissent).
Second, and more significantly, the amendment to LSA-R.S. 23:1103(B), contrary to the Third Circuit's suggestion in this and the consolidated Crowley case, does not merely overrule a single decision of this court (Brooks) with which the legislature disagreed, but rather an established line of jurisprudence dating back to the this court's 1980 decision in Fontenot. Indeed, by the time the legislature enacted this amendment, the law had become well-settled under Brooks, Fontenot and their progeny to the effect that an employer's (or compensation insurer's) reimbursement rights were confined in that such rights did not extend to an employee's general damage award. The well-settled nature of this line of jurisprudence is evidenced by the large number of appellate, as well as federal, cases which have applied the apportionment rules as defined not only by Brooks,[23] but also by Fontenot.[24] As we have recognized, "[a] statute that changes settled law relative to substantive rights only has prospective effect." Gilboy v. American Tabacco Co., 582 So.2d 1263, 1265 (La.1991) (emphasis supplied). Thus, while there is a category of legislation labeled "interpretive," legislation that changes settled law falls outside of that category.
Third, this line of jurisprudence was relied upon by the parties in the case before us, as well as in the consolidated Crowley case. The reliance is best evidenced by a stipulation entered into by the parties in the consolidated Crowley case to the effect that the entire amount Ms. Crowley received in the settlement from the third party tortfeasor constituted general damages. This stipulation, Judge Domengeaux pointed out in his Crowley dissent, "was made with full knowledge of the effect of the Brooks and Fontenot decisions, which held that the employer is not entitled to reimbursement for medical expenses or compensation benefits out of the claimant's *821 general damage award." 602 So.2d at 47. Continuing, Judge Domengeaux conjectured that "[t]he stipulation herein was entered in contemplation of the result dictated by Fontenot and Brooksotherwise, why was it made? The stipulation should be enforced according to the intent of the parties." 602 So.2d at 48. We agree.
Fourth, Act 454 amended not only LSA-R.S. 23:1103(B), but also numerous other sections of the Louisiana Worker's Compensation Law. Hence, the amendment to LSA-R.S. 23:1103(B) was part of an overall, extensive revision to the worker's compensation laws. This further undercuts the suggestion that this amendment was intended to retroactively change this one specific provision of the law as previously interpreted by this court. Moreover, we find it persuasive, while not conclusive, that the courts consistently have construed, with two insignificant exceptions,[25] the other sections of Act 454 as substantive and applied them prospectively only. See, e.g., Nelson v. Roadway Express, Inc., 588 So.2d 350, 353 (La.1991) (amendment to LSA-R.S. 23:1021(1)); Duncan v. South Central Bell Telephone Co., 608 So.2d 649 (La.App. 2d Cir.) (amendment to LSA-R.S. 23:1031(D)).
Similarly, Judge Domengeaux in his Crowley dissent aptly suggests an analogy to another section also amended by Act 454 as supporting a finding that the amendment to LSA-R.S. 23:1103(B) is substantive. Particularly, he cites the amendment to LSA-R.S. 23:1061, regarding the statutory employer defense, explaining:
I believe the situation is similar to the legislature's overruling of the case of Berry v. Holston Well Service, Inc., 488 So.2d 934 (La.1986). In Fountain v. CLECO, 578 So.2d 236 (La.App. 3d Cir. 1991), writ denied, 581 So.2d 707 (La. 1991), we declined to apply the amendment overruling Berry retroactively. Our lead was soon followed by the U.S. Fifth Circuit in Pierce v. Hobart Corp., 939 F.2d 1305 (5th Cir.1991) and by the Louisiana Fourth Circuit in Carter v. Chevron Chemical Co., 593 So.2d 942 (La.App. 4th Cir.1992) [, writ denied, 596 So.2d 211 (La.1992)].
602 So.2d at 47; see also Bowens v. General Motors Corp., 596 So.2d 243, 245-46 (La.App. 3d Cir.), writs granted, 600 So.2d 593, 594 (La.1992) (reaching same result);[26]Young v. Lyons Petroleum, Inc., 598 So.2d 702 (La.App. 3d Cir.), writs denied, 605 So.2d 1149, 1150 (La.1992); Bourgeois v. Puerto Rican Marine Management, Inc., 589 So.2d 1226 (La.App. 3d Cir.1991), writs denied, 592 So.2d 1299, 1300 (La.1992). Contra Brock v. Chevron Chemical Co., 750 F.Supp. 779 (E.D.La.1990), vacated by, 946 F.2d 1544 (5th Cir.1991).
Commenting on the Berry amendment, Judge Domengeaux stated in Fountain that "[c]onsidering the sweeping change this amendment makes in our prior law, I think it is clearly substantive and should not be applied retroactively." 578 So.2d at 239. Similarly, in Carter, supra, the Fourth Circuit noted that "[t]he 1989 amendment is more than merely interpretive of the original Act. The amendment represents a change in the rights and obligations of the parties and is therefore substantive law." 593 So.2d at 946. We find the rationale set forth in the jurisprudence *822 regarding the amendment overruling Berry equally applicable here.[27]
Finally, as noted above, Act 454 contains a delayed effective date of January 1, 1990, which in and of itself evidences a legislative intent that the Act be given only prospective effect. Indeed, we find the following observation made by the court in Manuel v. Carolina Casualty Ins. Co., 136 So.2d 275, 281 (La.App. 3d Cir.1961), equally apt here: "[c]ounsel for plaintiff has given us no satisfactory explanation as to why the Legislature would specifically provide that the Act was to become effective more than six months after its enactment, if the Legislature actually intended it to be given retroactive effect." See also Pierce, supra.
Accordingly, we conclude that this change in the law as previously interpreted by the courts is substantive and thus cannot be applied retroactively to rights and duties arising out of events which occurred prior to this change in the law. Thus, the apportionment of the funds received from the third party tortfeasor is to be governed by former LSA-R.S. 23:1103, as construed in Fontenot and Brooks.

V.
For the assigned reasons, the judgment of the court of appeal is reversed and the judgment of the district court reinstated. The case is remanded to the district court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
DENNIS, J., joins and adds reasons.
DENNIS, Judge, concurring.
I join in the majority opinion but write to add this observation. Under our system of government with limited powers, "[i]t is emphatically the province and duty of the judicial department to say what the law is." Marbury v. Madison, 1 Cranch 175, 177, 2 L.Ed. 60 (1803) (Marshall, C.J.). Within the judicial department, this court is the final arbiter of the meaning of the state constitution and laws. Therefore, after this court has said what a law means, legislative action adopting a different meaning necessarily effects a change and not an interpretation of that law.
NOTES
[1] St. Paul also filed a separate action against the same four parties for reimbursement. The two suits were consolidated for trial.
[2] Boston's policy provided a maximum single limit of $1,000,000 for the death or injury of any person or persons. Before invoking the concursus, Boston settled the claims of Joseph Jefferson, another Coastal employee injured in the accident, and Coastal for $170,000 and $3,556, respectively.
[3] Thereafter, Wagner filed a Rule to Show Cause why he should not be entitled to immediately withdraw the funds deposited in the registry of the court, less the amount of worker's compensation already paid by St. Paul ($285,074.73 plus $37,633.52 legal interest or $660,445.71). Wagner contended that this sum was uncontested as St. Paul's petition seeks a preferential credit against any future compensation obligations it may have. The district court rendered judgment in Wagner's favor, allowing him to withdraw these funds. At the hearing on this motion, however, the plaintiff stipulated "that any monies withdrawn today with respect to economic losses versus non-economic losses will be apportioned to whatever is a final decision of the jury." The court further ordered that any future payments of weekly benefits or medical expenses due to Wagner be paid into the registry of the court. The court of appeal, however, found that this judgment was invalid as it was in violation of the suspensive appeal order rendered earlier and as the district court lacked jurisdiction to render it. St. Paul Fire & Marine Ins. Co. v. Smith, 596 So.2d 272, 274 n. 1 (La.App. 3d Cir.), writ granted, 600 So.2d 593 (La.1992) (collecting cases).
[4] The court cited Billeaud v. United States Fidelity & Guaranty Co., 349 So.2d 1379, 1384 (La. App. 3d Cir.1977), as illustrating the method in which the apportionment and credit for future compensation payments is to be accomplished. 596 So.2d 272 (La.App. 3d Cir.1992).
[5] See Seaberry v. Smith, 532 So.2d 107 (La.1988) (remanding for reconsideration in accord with Brooks, supra), reh'g denied, 533 So.2d 1 (La. 1988), on remand, 534 So.2d 986, 987 (La.App. 5th Cir.1988), judgment rendered definitive, 536 So.2d 1257 (La.1989), on reh'g, 538 So.2d 1010 (La.1989); Johnson v. Fireman's Fund Ins. Co., 425 So.2d 224, 230-316 (La.1982) (Calogero, J., concurrence); Hess v. Sports Publishing Co., 520 So.2d 472 (La.App. 4th Cir.), writ denied, 523 So.2d 1343 (La.1988); Chatelain v. Project Square 221, 505 So.2d 177, 185 (La.App. 4th Cir.), writs denied, 508 So.2d 71, 74, reconsideration denied, 508 So.2d 813 (La.1987) (citing Landaiche, infra); Price v. Mitchell Const. Co., Inc., 482 So.2d 869 (La.App. 2d Cir.), writ denied, 484 So.2d 671 (La.1986); Derouselle v. Konecny, 468 So.2d 1382, 1385 (La.App. 1st Cir. 1985); Landaiche v. Lou-Con, 461 So.2d 1107, 1117 (La.App. 5th Cir.1984); Drum v. United States Fidelity & Guaranty Co., 454 So.2d 267, 268 (La.App. 4th Cir.1984), writ granted, 462 So.2d 1241, aff'd, 476 So.2d 800 (La.1985); Burns v. Fernandez, 401 So.2d 1033, 1042 n. 3 (La.App. 4th Cir. 1981); Lagraize v. Bickham, 391 So.2d 1185, 1192 (La.App. 4th Cir.1980) (on rehearing); Robertson v. Superior PMI, Inc., 600 F.Supp. 790, 795 (W.D.La.1985), aff'd as modified, 791 F.2d 402 (5th Cir.1986).
[6] Pre-Brooks, comments from this court foreshadowed this holding. In Johnson v. Fireman's Fund Ins. Co., 425 So.2d 224, 230 (La.1982), Justice Calogero in his concurrence stated that under the Fontenot rationale, "the worker's compensation insurer should only be able to seek reimbursement from the uninsured motorist carrier to the extent that the uninsured motorist carrier's payment is attributed to the same damages that the worker's compensation carrier has already paid for, that is, lost wages and medical expenses, but not pain and suffering." 425 So.2d at 230. Similarly, in Senac v. Sandefer, 418 So.2d 543 (La.1982), Justice Dennis, writing for the majority, reversed the Third Circuit's finding that compensation payments are in lieu of both lost wages and damages for pain and suffering, and held that "a double recovery, in the contemplation of [pre-amendment] La.R.S. 22:1386(1) [the nonduplication of recovery provision applicable to the Louisiana Insurance Guaranty Association], does not result where... the recipient of workers' compensation benefits receives a stipulated judgment for general damages which does not include lost wages or medical benefits." See McMahon v. Louisiana Ins. Guaranty Ass'n, 596 So.2d 1384, 1390-91 (La.App. 1st Cir.), writ denied, 604 So.2d 970 (La.1992) (finding 1990 amendment to LSA-R.S. 22:1386, changing the law as interpreted in Senac, supra, substantive and thus not retroactive); Dangerfield v. Soto, 599 So.2d 1092 (La. App. 4th Cir.1991) (reaching same result).
[7] See Daugherty v. Cross Marine, Inc., 598 So.2d 595, 599 (La.App. 4th Cir.1992); Schoemann v. Aetna Life & Casualty Co., 556 So.2d 77, 81 n. 3 (La.App. 4th Cir.1989), writ denied, 559 So.2d 1345, 1380 (La.1990); Robertson v. Employer's Casualty Co., 546 So.2d 263, 266 (La.App. 1st Cir.1989); Holloway v. State Through Dept. of Transportation and Development, 549 So.2d 859, 868 (La.App. 1st Cir.1989), review granted, 551 So.2d 620, rev'd on other grounds, 555 So.2d 1341 (La.1990); Strain v. Mitchell Mfg. Co., 534 So.2d 1385, 1390 (La.App. 4th Cir.1988), writ denied, 537 So.2d 1165 (La.1989); Thompson v. PetroUnited Terminals, Inc., 536 So.2d 504, 517 (La.App. 1st Cir.1988), writs denied, 537 So.2d 212, 213 (La.1989); Whitehead v. Fireman's Fund Ins. Co., 529 So.2d 82, 87-88 (La.App. 3d Cir.), writ denied, 532 So.2d 119 (La.1988); Willie v. Barriere Const. Co., Inc., 506 So.2d 669, 675 (La.App. 5th Cir.), writ denied, 512 So.2d 457 (La.1987); Senez v. Grumman Flxible Corp., 518 So.2d 574, 578 (La.App. 4th Cir.1987), writ denied, 521 So.2d 1151 (La.1988); Chevalier v. Reliance Ins. Co. of Illinois, 953 F.2d 877, 885 (5th Cir.1992); Davis v. Mobil Oil Exploration and Producing Southeast, Inc., 864 F.2d 1171, 1177 (5th Cir.1989).
[8] The other provision added, LSA-R.S. 23:1103(C), modified the effect of our holding in Moody v. Arabie, 498 So.2d 1081 (La.1986), regarding the apportionment of attorney's fees between the intervening employer (or insurer) and the employee. This amendment has been held to have prospective effect only. Taylor v. Production Services, Inc. of Mississippi, 600 So.2d 63, 65 n. 1 (La.1992) ("[t]he 1989 amendment is not applicable to this case in which judgment was rendered prior to the effective date of the statute"); Wood v. State Farm Mutual Automobile Ins. Co., 591 So.2d 1266, 1269 n. 1 (La.App. 3d Cir.1991). Indeed, one commentator has suggested that a retroactive application of this amendment would be unconstitutional as it would divest vested rights. Grimley, Sharing the Load: Proportioning Litigation Cost Under Moody, 38 La.B.J. 159 (1990). Nonetheless, the retroactive effect of each section of an amendment must be separately addressed. Lavespere v. Niagara Machine & Tool Works, Inc., 910 F.2d 167, 183 n. 83, reh'g denied, 920 F.2d 259 (5th Cir.1990) (citing Tullier v. Tullier, 464 So.2d 278, 282-83 (La.1985)); see also Beary v. City of Rye, 44 N.Y.2d 398, 406 N.Y.S.2d 9, 12-13, 377 N.E.2d 453, 457 (1978).
[9] See discussion of these cases in Section IV of this opinion.
[10] The employee-plaintiff, Earl Brooks, in Roadrunner Motor Rebuilders, Inc. v. Ryan, 603 So.2d 214 (La.App. 1st Cir.1992), filed an amicus curiae brief in these consolidated cases, advocating the correctness of the First Circuit's view that the amendment adding LSA-R.S. 23:1103(B) applies prospectively only.
[11] Article I, Section 23 of the Louisiana Constitution of 1974 prohibits ex post facto laws and laws impairing the obligations of contracts. Also, no law can be retroactively applied so as to divest a party of a vested right as this would violate the due process clause of the state and federal constitutions. Lott v. Haley, 370 So.2d 521, 524 (La.1979); see also Municipality No. One v. Wheeler & Blake, 10 La.Ann. 745 (1855) (noting that "retrospective laws in civil matters do not violate the Constitution, unless they tend to divest vested rights or to impair the obligation of contracts."). These constitutional issues, however, arise only when retroactive effect is given to a new law. As we find amended LSA-R.S. 23:1103(B) applies prospectively only, we do not reach plaintiff's vested rights argument.
[12] A noted commentator suggests that a literal interpretation of LSA-R.S. 1:2's proscription that no section of the Revised Statutes is retroactive unless it is expressly stated to be would "go a long way toward settling disputes over the application of an enactment." H. Alston Johnson, LegislationProcedure and Interpretation, Developments in the Law, 1983-84, 45 La.L.Rev. 341, 343-44 (1984) (quoted extensively in Yamaha Motor Corp., U.S.A. v. Bonfanti Industries, Inc., 589 So.2d 575 (La.App. 1st Cir.1991)). We decline to adopt this suggestion as it is inconsistent with the civilian principles consistently adhered to in our jurisprudence.
[13] Official comment (a) to LSA-C.C. Art. 6 states that this article does not change the law, "it reintroduces the substance of Article 8 of the Louisiana Civil Code of 1870 and accords with Louisiana jurisprudence interpreting the source provision."
[14] Unlike LSA-C.C. Art. 6; LSA-R.S. 1:2 does not distinguish between substantive, procedural and interpretive laws. See Yamaha Motor Corp., U.S.A. v. Bonfanti Industries, Inc., 589 So.2d 575 (La.App. 1st Cir.1991) (holding that an amendment to LSA-R.S. 32:774(J)(3), regarding termination of agreements with marine products dealers, was not retroactive as the amending Act "does not expressly state that it should be"); see also Miller v. J.P. Owen Co., Inc., 509 So.2d 1038, 1040 (La.App. 3d Cir.), writ denied, 514 So.2d 455 (La.1987) (noting that a literal reading of LSA-R.S. 1:2 would eliminate the exceptions to the prospectivity presumption).
[15] Article III, Section 19 of the La. Const. of 1974 provides that laws shall take effect on the sixtieth day after the legislature adjourns, but that any bill may specify an earlier or later effective date.
[16] While the jurisprudence had also recognized a fourth category, remedial laws, the legislature intentionally left this category out of LSA-C.C. Art. 6 because of the multiplicity of meanings it had been given: "[a] remedial law may be procedural, interpretive or substantive." Official Comment (d) to LSA-C.C. Art. 6; see also Rodriguez v. Brown & Root, Inc., 410 So.2d 325, 327-28 (La.App. 4th Cir.1982).
[17] Gulf Oil, supra, overruled a prior property decision, holding that state patents covering navigable water bottoms were absolute nullities that could not be ratified by a curative statute. It has been noted, however, that the Gulf Oil decision "was considerably less innovative than it might initially appear. Academics had subjected the earlier decision to a barrage of criticism, and the court had dodged the issue the first time it appeared in the 1970s." Murchison, The Judicial Revival of Louisiana's Civilian Tradition: A Surprising Triumph for the American Influence, 49 La.L.Rev. 1, 23 (1988).
[18] As an aside, we note that we could only find one case in which such an "uncritical expression" was judicially noted, that is, in the concurring opinion of Mr. Justice Summers in the denial of writs in State v. Cenac, 241 La. 1055, 132 So.2d 928 (1961).
[19] Ardoin v. Hartford Accident & Indemnity Co., 360 So.2d 1331, 1338 (La.1978), recognizes a different type of interpretive legislation in which "the Legislature defines and makes explicit that which was implicit in a statute." Pierce v. Hobart Corp., 939 F.2d 1305, 1309 (5th Cir.1991); see also Winstead v. Ed's Live Catfish & Seafood, Inc., 554 So.2d 1237, 1240-42 (La. App. 1st Cir.1989), writ denied, 558 So.2d 570 (La.1990).
[20] Official Comment (c) to LSA-C.C. Art. 6 cites Ardoin, supra, and Barron, supra, as examples of interpretive laws.
[21] See also Laubie v. Sonesta Intern. Hotel Corp., 587 F.Supp. 457 (E.D.La.1984), aff'd, 752 F.2d 165 (5th Cir.1985) (finding amendment to LSA-C.C. Art. 2421 changing the law as construed a year earlier by this court in Laubie v. Sonesta Intern. Hotel Corp., 398 So.2d 1374 (La.1981), interpretive and thus retroactive); see also Peppard v. Hilton Hotels Corp., 482 So.2d 639 (La. App. 4th Cir.1986) (reaching the same result).
[22] A similar view is expressed in Singer, 1A Sutherland Stat. Const. § 27.04 (4th Ed.1985):

The usual purpose of a special interpretive statute is to correct a judicial interpretation of a prior law which the legislature considers inaccurate. Where such statutes are given any effect, the effect is prospective only. Any other result would make the legislature a court of last resort.... The application of the law to particular situations in litigation is clearly a judicial function, but the definition of the legislature's own acts is essential to the determination of the quality and character of the legislative regulation. There should be no question that an interpretive clause operating prospectively is within the legislature's power.
[23] See cases cited in note 7, supra.
[24] See cases cited in note 5, supra.
[25] First, in Blanson v. State Through Dept. of Public Safety, 571 So.2d 181 (La.App. 4th Cir. 1990), writ denied, 573 So.2d 1142 (La.1991), the Fourth Circuit found the amendment to LSA-R.S. 23:1225(C)(1), retroactive as it merely substituted the word "or" for "and" to reflect the original legislative intent. See also Dupre v. City of New Orleans, 579 So.2d 496 (La.App. 4th Cir.), writ denied, 584 So.2d 679 (La.1991) (citing Blanson, supra, to reach the same result). The other exception is Creed v. Avondale Industries, Inc., 608 So.2d 226 (La.App. 5th Cir.), in which the Fifth Circuit held that the amendment to LSA-R.S. 23:1021(7)(b) was interpretive in that it merely codifies the holding in a prior case and sets forth the applicable burden of proof, a procedural matter.
[26] We render a separate opinion today in Bowens v. General Motors Corp., 608 So.2d 999 (La. 1992). There, we note the issue of whether the amendment to LSA-R.S. 23:1061 is retroactive, but do not resolve it, noting that the outcome of the case would be the same regardless of whether the pre-amendment or the amended version of the statute applies. Nonetheless, in Bowens, we observe that the appellate courts addressing the issue have uniformly held the amendment is not retroactive.
[27] A second analogy has also been suggested, that is, the amendment to LSA-R.S. 23:1102(C)(2), repealing an attorney's fees provision; that provision uniformly has been construed as substantive and applied prospectively only. Wood v. State Farm Mutual Automobile Ins. Co., 591 So.2d 1266, 1269 (La.App. 3d Cir. 1991) (describing this as a substantive change in the worker's compensation statute); Jaffarzad v. Jones Truck Lines, Inc., 561 So.2d 144, 162 (La. App. 3d Cir.), writ denied, 565 So.2d 450 (La. 1990); Taylor v. Production Services, Inc. of Mississippi, 587 So.2d 815, 816 n. 1 (La.App. 3d Cir.1991), writ granted, 592 So.2d 402, aff'd as amended, 600 So.2d 63 (La.1992); see also note 8, supra, suggesting yet a third analogy, the amendment to LSA-R.S. 23:1103 altering the result dictated by Moody v. Arabie, 498 So.2d 1081 (La.1986).