In re William G. DOWDEN and Mary Elizabeth Keyser Dowden.

H. A. BOUGHTON, Trustee,

v.

William G. DOWDEN, et al.

Civil Action No. 96–0758.

United States District Court, W.D. Louisiana, Alexandria Division.

Feb. 25, 1997.

---

James W. Berry, Coenen & Berry, Rayville, LA, J. Michael Percy, Percy Smith Foote & Gadel, Alexandria, LA, for H. A. Boughton.

Chatham H. Reed, Simon Fitzgerald Cooke Reed & Welch, Shreveport, LA, for William G. and Mary Elizabeth Keyser Dowden.

Charles Raymond Whitehead, Jr., Whitehead Law Offices, Natchitoches, LA, Johnny E. Dollar, Robert N. Anderson, Dollar Laird & Scott, Monroe, LA, for Louisiana Gin Co., Inc. and Jack Singleton.

Darryl J. Hebert, Devillier Law Offices, Eunice, LA, for American Security Bank.

Marshall T. Napper, C. A. Martin III, Shotwell Brown & Sperry, Monroe, LA, for Helena Chemical Co.

Stephen D. Wheelis, Provosty Sadler & deLaunay, Alexandria, LA, for Maxwell Cotton Co.

Robert L. Royer, Alexandria, LA, for Federal Compress & Warehouse Co., Inc.

C. Brent Coreil, Soileau & Coreil, Ville Platte, LA, for James G. Earles, John Earles, Earles Inc. and Earles Farming Co.

### *RULING*

LITTLE, Chief Judge.

For the following reasons, the motion for partial summary judgment filed by the plaintiff, H. A. Boughton, Trustee, is DENIED.

### I. BACKGROUND

In this chapter 12 bankruptcy proceeding, H. A. Boughton ("Boughton" or "trustee") serves as trustee over the estate of the debtors, William G. Dowden and Mary Elizabeth Keyser Dowden (collectively referred to as "Dowdens" or "debtors"). In this capacity, Boughton must collect the assets of the debtors, disburse funds in the appropriate man-

ner, and otherwise manage the affairs of the estate.

The facts in this case are largely undisputed, and may be briefly summarized. The Dowdens raised cotton during the 1994 crop year and thereby incurred post-petition expenses. In particular, Helena Chemical Company ("Helena") supplied goods necessary for cotton production, and the debtors consequently executed an Agricultural Security Agreement in Helena's favor. In its order authorizing the debtors to obtain credit from Helena, the United States Bankruptcy Court for the Western District of Louisiana specified that Helena's security interest "is specifically subordinate and junior to any previously recorded liens ... in favor of Joseph C. Perot, Jr., HT Bar Stock Farms, Inc. and/or Henry Cook Taylor."

The trustee received the proceeds from the 1994 cotton crop in four separate checks. The funds from the first three checks paid the debts owed to Perot, HT Bar Stock Farms, and Taylor. The very day he received the fourth check, in the amount of $188,810.60, Boughton issued a check from his general trust fund to Helena in the amount of $188,450.13 as payment in full for the goods previously advanced. Although the check to Helena was duly negotiated, the fourth check to the Dowdens has never been honored. The trustee seeks recovery of the money paid to Helena, and filed the instant motion for partial summary judgment against Helena on this issue. The defendant timely filed a memorandum in opposition to the motion.

## II. STANDARD OF REVIEW

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby. Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. In making its determination, the court must draw all justifiable inferences in favor of the nonmoving party. *Id.* at 255, 106 S.Ct. at 2513–14. Once the moving party has initially shown "that there is an absence of evidence to support the nonmoving party's case," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986), the non-movant must come forward, after adequate time for discovery, with "specific facts" showing a genuine factual issue for trial. Fed.R.Civ.P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "Conclusionary denials, improbable inferences, and legalistic argumentation" are not an adequate substitute for specific facts showing that there is a genuine issue for trial. *S.E.C. v. Recile*, 10 F.3d 1093, 1097 (5th Cir.1993).

## III. ANALYSIS

In his memorandum, the trustee asserts the following four arguments in support of his motion for summary judgment: (1) the Louisiana Civil Code provides that a person who receives a thing not owed to him must return it; (2) the Louisiana Civil Code allows a party to sue for restitution if he has paid the debt of another by mistake; (3) the trustee may avoid the transaction pursuant to 11 U.S.C. § 549(a)(2)(B) because the transfer to Helena was not sanctioned by the Bankruptcy Code or the court; and (4) equitable principles favor preservation of a debtor's estate and 11 U.S.C. § 105 empowers the court to order the return of the funds in this case. We will consider each argument in turn.

### A. *Civil Code provisions*

#### 1. *Retroactivity*

As an initial matter, we must consider whether the 1995 revisions to the relevant provisions of the code should control this case. The trustee invokes articles 2301, 2302, and 2310 of the Louisiana Civil Code 1870 in effect prior to the 1995 revisions. The Louisiana Legislature revised these articles as part of an overall recodification of Book III, Title V of the Code, and designated

1 January 1996 as the effective date of the changes. Both parties assume in their briefs that the revisions have no relevance to this proceeding. We concur. For the reasons discussed below, we find that the 1995 revisions are not retroactive.

Article 6 of the Civil Code codifies the general rule of retroactive application of legislative changes, as follows:

> In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretive laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary.

La.Civ.Code art. 6 (West 1993). The Louisiana Supreme Court has dictated a two-step analysis under article 6. First, a court must determine the legislative intent regarding retroactivity. Second, in the absence of a clear legislative intent, a court must classify the enactment as substantive, procedural or interpretive and apply the provisions of article 6. *Cole v. Celotex Corp.,* 599 So.2d 1058, 1063 (La.1992) (citations omitted). Substantive laws either create or change rules, rights, and duties. *St. Paul Fire and Marine Ins. Co. v. Smith,* 609 So.2d 809, 817 (La.1992). Interpretive laws "merely establish the meaning that the interpretive statute has from the time of its enactment." *Id.* "Procedural laws prescribe a method for enforcing a substantive right and relate to the form of the proceeding or the operation of the laws." *Segura v. Frank,* 630 So.2d 714, 723 (La.1994) (citations omitted).

Both the state and federal constitutions, however, prohibit the retroactive application of a law that would divest a party of a vested property right. *St. Paul Fire,* 609 So.2d at 816 n. 11. Since the accrual of a cause of action constitutes a vested property right under Louisiana law, *Cole,* 599 So.2d at 1063 (citations omitted), the relevant time for determining retroactivity is the date when a party could have instituted a lawsuit. *Id.* n. 15.

The legislative enactments at issue in this case do not provide a clear expression of the legislature's intent regarding retroactivity. Although the provisions specify an effective date of 1 January 1996, the Louisiana Su-

preme Court has found that "a delayed effective date evidences some, albeit inconclusive, intent of prospective application." *St. Paul Fire,* 609 So.2d at 817.

Proceeding to the task of classifying the changes to the code, we find that these amendments are substantive. Revised article 2299 is based on article 2301 of the Louisiana Civil Code of 1870. Both articles obligate a person who has received a payment not owed to him to restore it to the person from whom he received it. La.Civ.Code Ann. art. 2299 (West 1997); La.Civ.Code Ann. art. 2301 (West 1979). Under both provisions, the obligation exists without regard to whether the payment was received knowingly or by mistake. Although the recipient's duty remains constant, the legislature amended the payor's right to recover the payment.

In the amendments to Title V of Book III, the legislature suppressed article 2302 of the Civil Code of 1870. This article had provided a right to recover the payment not owed, but limited the right to instances in which the payment was made through mistake. The comments to revised article 2299 state, however, that "a person who *knowingly* or through error has paid or delivered a thing not owed may reclaim it from the person who received it." La.Civ.Code Ann. art. 2299 (West 1997) (emphasis added). Thus, article 2302 supported a cause of action only where the payment was made in error, but revised article 2299 allows a party to seek reimbursement even when the payment was made knowingly.

In sum, the 1995 amendments alter the payor's legal right of recovery and, therefore, are properly classified as a substantive change in the code. Moreover, the change in the right of recovery is but one part of the general revision to Title V, *see* 1995 La. Acts 1041, and such an overall recodification indicates substantive change. *St. Paul Fire,* 609 So.2d at 821. Finally, the delayed effective date also supports a finding that the changes be given prospective effect only. *Id.* at 822 (citing *Manuel v. Carolina Casualty Ins. Co.,* 136 So.2d 275, 281 (La.Ct.App.3d Cir.1961)). Since we conclude that article 6 of the Louisi-

ana Civil Code does not call for retroactive application of the relevant amendments to the code, we need not reach any constitutional limitations on retroactivity that may be present in this case. *Ashwander v. Tennessee Valley Auth.*, 297 U.S. 288, 346, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936). Accordingly, we will analyze the trustee's arguments applying the provisions of Title V, Book III in effect prior to 1 January 1996.

### 2. *Obligation to restore a thing unduly received*

■ A person who receives a thing "not due to him" is obligated to restore it to the person who gave it to him. La.Civ.Code Ann. art. 2301 (West, WESTLAW through all 1995 legislation). The right to reclaim a thing unduly paid, however, exists when "paid through mistake." La.Civ.Code Ann. art. 2302 (West, WESTLAW through all 1995 legislation). The code defines a thing not due as "that which is paid on the supposition of an obligation which did not exist." La.Civ.Code Ann. art. 2304 (West, WESTLAW through all 1995 legislation). The provisions of the code regarding a thing not due "must not be extended to things due on a day certain, or to conditions which must certainly happen." La.Civ.Code Ann. art. 2309 (West, WESTLAW through all 1995 legislation).

In the present case, the parties do not dispute that a valid obligation existed between the debtors and Helena. More particularly, no one questions that Helena extended credit to the debtors, that the bankruptcy court authorized the Dowdens to obtain this credit, that the bankruptcy court ratified the loan agreement between Helena and the Dowdens, or that the debts superior to Helena's claim have been satisfied.[1] Simply put, we find that the debt was due and that article 2301 is inapplicable to this case. *Continental Serv. Life and Health Ins. Co. v. Grantham*, 811 F.2d 273, 276 (5th Cir.1987) (citing *Johnson v. Hospital Affiliates Int'l, Inc.*, 416 So.2d 207, 208–209 (La.Ct.App. 1st Cir.1982)).

Although the trustee makes much of the fact that the estate never received all of the proceeds from the sale of the 1994 cotton crop, he has failed to explain how this fact affects the legal obligation to Helena. The trustee does not dispute that Helena has earned its pay, that payment was issued to the proper entity, or that he was the party responsible for making the appropriate payments to the debtors' creditors. Thus, we can find no mistake upon which to premise relief pursuant to article 2302. *Continental,* 811 F.2d at 276 (citing *Mathews v. Louisiana Health Serv. and Indem. Co.*, 471 So.2d 1199, 1203 (La.Ct.App.3d Cir.1985)).

■ Even if the trustee had proven that the payment was not due when it was paid, he does not dispute that the payment would be due on a day certain or upon the occurrence of a condition certain. Although it may not be prudent to pay an obligation before one has sufficient funds allocated to the particular obligation, such an action in no way eliminates the obligation. Since we find that the obligation to Helena was either due or certain to be due, the articles pertaining to a thing not due cannot control. La.Civ. Code Ann. art. 2309 (West, WESTLAW through all 1995 legislation).

■ In applying these provisions of the code, moreover, a court must remain conscious of the general principle that "voluntary payments made with full knowledge of all the facts and not under duress may not subsequently be recovered, even though the amount so paid is not actually owed." *Whitehall Oil Co., Inc. v. Boagni,* 217 So.2d 707, 714 (La.Ct.App.3d Cir.1968) (Tate, J., dissenting), *aff'd,* 255 La. 67, 229 So.2d 702 (1969) (approving the general principle, but finding it inapplicable to the instant case); *see also Carter v. Montgomery Ward & Co., Inc.,* 413 So.2d 309, 314–315 (La.Ct.App.3d Cir.1982). Pursuant to this general rule, we find, in the alternative, that the trustee in this case issued the payment voluntarily, with full knowledge of the facts regarding the obligation to Helena, and that the payment

---

1. The trustee's lien, superior to all other security interests, remains outstanding. The court, however, will not question the trustee's decision to disburse payments to certain creditors ahead of

his own claims. This level of administrative decision making lies within his sound discretion. 11 U.S.C. §§ 1202(b), 1226.

was not made under duress. Accordingly, the trustee is not entitled to restitution.

### 3. *Right to restitution of payment of debt of another*

 A party seeking restitution for the payment of another's debt must establish the following:

> (1) the existence of a valid debt; (2) that he paid that debt; (3) that it was a debt of another person; and (4) that the payment was made by mistake.

*Continental,* 811 F.2d at 275 (citations omitted); La.Civ.Code Ann. art. 2310 (West, WESTLAW through all 1995 legislation).

As in the *Continental* case, the plaintiff has not demonstrated that the payment was issued by mistake. As discussed above, Helena was entitled to payment in the amount it received and from the entity responsible for making the payment. Thus, the court finds that any mistake made on the part of the trustee does not fall within the mistakes contemplated by article 2310.

### B. *Bankruptcy Code provisions*

#### 1. *The trustee's avoidance power*

The Bankruptcy Code enables a trustee to avoid a transfer of the estate's property "that is not authorized under this title or by the court." 11 U.S.C. § 549(a)(2)(B). The parties concede, however, that the bankruptcy court both authorized the debtors to obtain credit from Helena and approved the security agreement executed in Helena's favor. The ultimate payment of the debt conformed with the court's order regarding the priority of the liens on the 1994 cotton crop and, therefore, is not contrary to the principles of bankruptcy law. Thus, 11 U.S.C. § 549(a)(2)(B) does not support the reimbursement of the funds to Boughton.

#### 2. *The court's equitable power*

In this case, the trustee failed to follow basic common sense. He issued a payment out of his general trust fund account without insuring that there were sufficient funds in the particular subaccount to satisfy the payment. As the trustee stated in his memorandum, payments on behalf of the thousands of debtors he supervises are drawn from the same account. Under this system, Helena could not know whether the trustee's subaccount for the Dowdens had sufficient funds and, therefore, we find that Helena should not suffer from the trustee's error.

While the court agrees with the plaintiff's description of our broad equitable powers pursuant to 11 U.S.C. § 105, we are not persuaded to exercise those powers in the manner urged. Consequently, we need not reach the issue of whether § 105 would allow the relief requested. The court cautions the trustee, however, that § 105 "does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity." *In the Matter of Oxford Management, Inc.,* 4 F.3d 1329, 1334 (5th Cir.1993) (Little, J.) (quoting *United States v. Sutton,* 786 F.2d 1305, 1308 (5th Cir.1986)).

## IV. CONCLUSION

For the reasons stated above, the trustee's motion for partial summary judgment against Helena is DENIED.