746 So.2d 685 (1999)
Shelita GIBBS
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, et al.
No. 99-C-1242.
Court of Appeal of Louisiana, Fourth Circuit.
October 13, 1999.
Writ Denied January 14, 2000.
*686 Wayne J. Lee, Barry W. Ashe, Stone, Pigman, Walther, Wittmann & Hutchinson, L.L.P., New Orleans, Louisiana and Terrill W. Boykin, Stephen J. Moore, Jeffrey C. Vaughn, Rodney, Bordenave, Boykin, Bennette & Boyle, New Orleans, Louisiana, Counsel for Defendants/Relators.
Cleo Fields, Kenneth Fabre, The Fields Law Firm, Baton Rouge, Counsel for Plaintiff-Respondent.
Court composed of Chief Judge ROBERT J. KLEES, Judge WILLIAM H. BYRNES, III, Judge MOON LANDRIEU, Judge MICHAEL E. KIRBY and Judge ROBERT A. KATZ.
BYRNES, Judge.
This Court has granted the application of State Farm Mutual Automobile Insurance Company and Jeffery K. Jenkins in order to determine whether LSA-R.S. 32:866 (the "no pay, no play" statute) may be used to deprive the uninsured owner of a parked vehicle of the right to recover property damage where there is no allegation of comparative negligence.
On October 14, 1998, Jenkins' vehicle struck an unoccupied, parked vehicle owned by the plaintiff-respondent, Shelita Gibbs. Ms. Gibbs sued the relators, Jenkins and his insurer, State Farm. Ms. Gibbs did not have insurance.
State Farm moved for summary judgment contending that the literal wording of LSA-R.S. 32:866 applies to parked vehicles, especially in view of the fact that Ms. Gibbs failed to have her vehicle de-registered pursuant to LSA-R.S. 32:861(A)(3).
The trial court denied relators' motion, ruling that LSA-R.S. 32:866 does not apply to parked vehicles. We agree. The purpose of LSA-R.S. 32:866 is to discourage the operation of uninsured vehicles. To apply the law to parked vehicles would do nothing toward accomplishing that purpose, i.e., in legal parlance one could say that to read the law as suggested by relators leads to absurd consequences. Likewise, LSA-R.S. 32:861(A)(3) was not intended to deprive owners of parked vehicles of the right to recover property damage. Nothing in LSA-R.S. 32:861(A)(3) *687 either explicitly or implicitly suggests the result contended for by the relators.
However, as this matter is res nova, and as it is possible to read LSA-R.S. 32:866 as suggested by relators, we find that State Farm's refusal to pay cannot be characterized as arbitrary or capricious under LSA-R.S. 22:1220.
For the foregoing reasons, we grant relators' application for supervisory writs, but deny relief and affirm the judgment of the trial court.
WRIT GRANTED; RELIEF DENIED; JUDGMENT AFFIRMED.
KLEES, C.J., and KATZ, J., CONCUR WITH REASONS.
LANDRIEU, J., DISSENTS WITH REASONS.
KLEES, C.J., concurring:
To penalize the owner who has parked her vehicle in order to comply with the compulsory motor vehicle liability security law and sustain damage through no fault of her own is not fair or just. I find no error in the ruling of the trial court.
KATZ, J., concurring with reasons:
The Plaintiff/Respondent, Shelita Gibbs, filed suit for property damage to her unoccupied, parked vehicle for the damage inflicted by Jeffery Jenkins and his insurer, State Farm. Ms. Gibbs had let the insurance lapse on her vehicle. Also, her car could not run without the needed repairs which she estimated would exceed $1,000.00. Therefore, the vehicle has remained inoperative and was parked in front of her house at the time of the accident.
State Farm asserts that R.S.32:866 provides that the owner of an uninsured motor vehicle cannot recover the first $10,000.00 of property damage based on any cause or right of action that the owner may have against a third party.
The trial court rejected the argument of State Farm and denied the summary judgment on the basis that R.S.32:866 does not apply to parked vehicles.
The majority opinion agrees with the trial court.
I concur in the result of the majority but affirm the judgment of the trial court based upon the following analysis:
R.S.32:866(A)(1) reads as follows:
"There shall be no recovery for the first $10,000.00 of bodily injury and no recovery for the first $10,000.00 of property damage based on any cause or right of action arising out of a motor vehicle accident, for such injury or damages occasioned by an owner or operator of a motor vehicle involved in such accident who fails to own or maintain compulsory motor vehicle liability security."
Civil Code, Article 9 provides that: "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature."
Civil Code, Article 11 reads: "The words of a law must be given their generally prevailing meaning. Words of art and technical terms must be given their technical meaning when the law involves a technical matter."
For me, the result of this case under the factual situation as presented turns upon the word "occasioned" that appears in 866(A)(1).
Black's Law Dictionary, Fifth Edition, gives the following definition for the word "occasioned" used as a verb: "to cause or bring about by furnishing the condition or opportunity for the action of some other cause.... to give occasion to, to produce; to cause incidentally or indirectly; bring about or be the means of bringing about or producing."
It appears to me that in order to activate the "no pay" rule in 32:866, the owner who has let the insurance coverage lapse or failed to obtain coverage in the first *688 instance should not be penalized unless the owner plays an active part in bringing about the injury and damages. I do not find that leaving an inoperable and uninsured vehicle parked in front of one's home constitutes taking an active role in bringing about damage to the vehicle.
To read the statutory provisions as State Farm does, one would have to delete the word "occasioned" and then the provisions would apply to the owner of a parked vehicle since the statute would clearly penalize any owner for the mere failure to have compulsory motor vehicle liability security on the vehicle irrespective of whether or not the vehicle was being operated at the time of a motor vehicle accident.
There is also another scenario in which I could envision that the "no pay" provision would not be activated. For example, suppose that Ms. Gibbs instead of parking her car on the street had decided to park it in her yard or driveway and she still could not afford to pay for the insurance. Next, suppose that a neighbor's tree was termite-infested and rotten and one morning Ms. Gibbs woke up and found the tree lying across her car after having smashed the car roof and broken some windows.
Assume also that State Farm provided a homeowner's liability policy to the neighbors. Could State Farm then argue that it needn't pay for any property damage resulting from the tree falling on the car because Ms. Gibbs did not have any liability insurance on the damaged car?
Under this scenario I would find that the "no pay" provisions of RS 32:866(A)(1) were not operative for two reasons: first, the falling of the tree on the car does not constitute a "motor vehicle accident" as required by the statute, and secondly, Ms. Gibbs could not be considered as having "occasioned" or "caused" or played any active role in bringing about the falling of the tree.
Hence, under this set of assumptions, Ms. Gibbs ought to be able to recover her property damage from the neighbor's homeowner's policy issued by State Farm.
Returning to the case sub judice, as long as the term "occasioned" is in the statute, then there must be some active part on behalf of the owner in bringing about the accident or damages other than merely parking in front of her home.
Under the facts as set forth in the record of the summary judgment, the trial court is correct and I concur with majority in granting the writ, denying the relief and affirming the trial court judgment and I would remand this matter to the trial court for further proceedings.
LANDRIEU, J., dissenting:
Act No. 1476 of 1997, entitled "Omnibus Premium Reduction Act of 1997," enacted La.Rev.Stat. 32:866. The Act's primary purpose was "a significant reduction in the premium rate of motor vehicle insurance." La. Acts 1997, No. 1472, § 1. Its stated secondary purpose was "to encourage all persons who own or operate motor vehicles on the public streets and highways of this state to comply with the Motor Vehicle Safety Responsibility Law...." Id. (Emphasis added.)
La.Rev.Stat. 32:866 A(1) provides:
There shall be no recovery for the first ten thousand dollars of bodily injury and no recovery for the first ten thousand dollars of property damage based on any cause or right of action arising out of a motor vehicle accident, for such injury or damages occasioned by an owner or operator of a motor vehicle involved in such accident who fails to own or maintain compulsory motor vehicle liability security.
*689 The language of La.Rev.Stat. 32:866 A(1) is clear. If one owns a vehicle and does not have compulsory motor vehicle liability security, and that vehicle is involved in a motor vehicle accident on a public street or highway, the owner cannot recover the first $10,000.00 of property damage arising out of that accident.
The legislature could have excluded stopped or parked vehicles, but it did not do so. Moreover, there is not the slightest suggestion in the wording of either the statute or the Act's expressed purpose to indicate that the legislature intended to do so.
Under the majority's reasoning, an uninsured owner can recover if his vehicle is damaged while temporarily parked on a street or highway even though the vehicle was being operated without insurance moments before it was struck.