796 So.2d 862 (2001)
Tanya ROGERS
v.
COMMERCIAL UNION INSURANCE COMPANY, et al.
No. 01-443.
Court of Appeal of Louisiana, Third Circuit.
October 3, 2001.
*863 William M. Ford, Attorney at Law, Alexandria LA, Counsel for: Tanya Rogers.
Samuel Newman Poole Jr., Gold, Weems, Bruser, Sues, Alexandria, LA, Counsel for: Continental Insurance Company Brian Michener.
*864 Court composed of ULYSSES GENE THIBODEAUX, SYLVIA R. COOKS, and JOHN D. SAUNDERS, Judges.
SAUNDERS, Judge.
On appeal, Continental Insurance Company (Continental) and Brian Michener assert that the trial court erred in granting a judgment in favor of Tanya Rogers for $1,179.36 in damages and $5,000.00 in penalties. For the following reasons, we affirm the judgment of the trial court.

FACTS
This suit arose out of an accident which happened on November 11, 1999. On that day, Tanya Rogers' automobile was parked in a private parking lot near her apartment, and Brian Michener was repairing his truck. Michener removed the drive shaft from his pickup truck which caused his truck to roll downhill and land on the hood of Rogers' car. At the time of the accident, Tanya Rogers was uninsured.
Ms. Rogers reported the accident to Continental Insurance Company, Michener's insurer, on the same day the accident occurred. Continental immediately advised Rogers of the "No Pay, No Play" statute explaining that her recovery may be barred because she was uninsured. Continental then took a statement from Michener, the insured. Four days later, Continental informed Rogers that her claim was being denied under the statute. As a result, Ms. Roger sued Michener and Continental for damages, penalties and attorney's fees.

PROCEDURAL FACTS
A trial was held in this matter on August 24, 2000, in Pineville City Court. On October 5, 2000, the trial court issued its Written Reasons for Judgment. The court ruled that Roger was entitled to damages despite her lack of insurance, that Continental was "arbitrary and capricious", that Continental "did not timely adjust the claim", and that Continental "failed to make a tender within the period required by Louisiana law." The trial court judge awarded Ms. Rogers $1,179.36 in damages to her vehicle, plus a $5,000.00 penalty and $3,500.00 in attorney's fees under the statute.
On October 6, 2000, the defendants filed Motion for New Trial. After hearing the arguments, the trial court rendered a revised judgment on February 1, 2001, in which the $3,500.00 attorney's fee award was vacated; however, the trial court maintained the $1,179.36 in damages and the $5,000.000 penalty. Continental then filed this appeal.

LAW AND ANALYSIS

ASSIGNMENTS OF ERROR
On appeal, Michener and Continental assert the following three assignments of error:
1. The trial court committed legal error in awarding damages to the uninsured owner of a vehicle whose recovery was prohibited by Louisiana's "no pay, no play" statute (La.R.S.32:866).
2. The trial court committed legal error in using the estimated cost of repair as the measure of damages for a vehicle whose value was less than the cost to repair it.
3. The trial court committed legal error in finding that a failure to pay a disputed insurance claim within 14 days constituted a failure to adjust a claim as required by La.R.S. 22:658(A)(3).

STANDARD OF REVIEW
The reviewing court must give great weight to the factual conclusions of the trial court. Darbonne v. Wal-Mart Stores, Inc., 2000-551 (La.App. 3 Cir. *865 11/14/00), 774 So.2d 1022, 1025. Manifest error is the standard used by appellate courts to resolve conflicting factual evidence. Ambrose v. New Orleans Police Department Ambulance Service, 93-3099 (La.7/5/94), 639 So.2d 216. For the reviewing court, the issue to be resolved is not whether the trier of fact was wrong but whether the factfinder's conclusions were reasonable. Stobart v. State, Through DOTD, 617 So.2d 880, (La.1993).

CONTINENTAL AND MICHENER

FIRST ASSIGNMENT OF ERROR
In their first assignment of error, Continental and Michener assert that the trial court erred in awarding damages to Rogers, an uninsured motorist, because it was prohibited by Louisiana's "no pay, no play" statute, La.R.S. 32:866.
At the time of the accident, La.R.S. 32:866 provided in pertinent part:
A(1) There shall be no recovery for the first ten thousand dollars of bodily injury and no recovery for the first ten thousand dollars of property damage based on any cause or right of action arising out of a motor vehicle accident, for such injury or damages occasioned by an owner of operator of a motor vehicle in such accident who fails to own or maintain compulsory motor vehicle liability security....
A(3) The limitation of recovery provisions of this Subsection does not apply if the driver of the other vehicle: (a) is cited for a violation of R.S. 14:98 as a result of the accident and is subsequently convicted of or pleads nolo contendere to such offences; (b) intentionally causes the accident; (c) flees from the scene of the accident; and, (d) at the time of the accident, is in furtherance of the commission of a felony offense under the law.
The appellants argue that the accident occurred when La.R.S. 32:866 barred recovery for damages sustained by an uninsured except in the above four exceptions. They argue that the statute did apply to parked vehicles because such a situation was not specifically enumerated in one of the exceptions.
We find that this argument is without merit for two reasons. First, according to Louisiana jurisprudence at the time of the accident, the statute does not apply to legally parked vehicles. Gibbs v. State Farm Mutual Automobile Insurance Company, 99-1242 (La.App. 4 Cir. 10/13/99) 746 So.2d 685, writ denied XXXX-XXXX (La.1/14/00) 753 So.2d 220. The purpose of LSA-R.S. 32:866 is to discourage the operation of uninsured vehicles. To apply the law to parked vehicles would not accomplish the purpose. Likewise, the statute is not intended to deprive owners of parked vehicles of the right to recover property damage. Id. at 686.
Second, in 1999, the Legislature amended La.R.S. 32:866(H) to state, "[t]he provisions of this Part shall not apply to any vehicle which is legally parked at the time of the accident." Because the provision was added in 1999 and became effective two months after the accident on January 1, 2000, the appellants argue that the amendment of the statute did not apply to this case. Further, they assert that the amendment to the statute indicated a legislative intent to change the law and create a new exemption that did not previously exist. As such, the law did not apply retroactively.
In determining whether laws may apply retroactively, LSA-C.C. Art. 6 provides:
In absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and *866 interpretative laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary.
In interpreting this article, the Supreme Court has created a two-fold inquiry. First, we must determine whether in the enactment the legislature expressed its intent regarding retrospective or prospective application. If the legislature did so, our inquiry ends. If not, we must classify the enactment as substantive, procedural, or interpretative. Cole v. Celotex Corp., 599 So.2d 1058, 1063 (La.1992).
First, in Act 1085 of 1999, we do not find that the legislature expressed an intent regarding the retrospective or prospective application. Therefore, we must decide whether the enactment is substantive, procedural or interpretative in accordance with the second fold of the inquiry.
It is well established that substantive laws establish new rules, rights, and duties or change existing ones. Batiste v. Capitol Home Health, 96-799 (La. App. 3 Cir.9/25/97) 699 So.2d 395, 397 (citing St. Paul Fire & Marine Ins. Co. v. Smith, 609 So.2d 809 (La.1992)). Procedural laws prescribe a method for enforcing a substantive right and relate to the form of proceeding or operation of the laws. Graham v. Sequoya Corp., 478 So.2d 1223 (La.1985). Interpretative laws merely establish the meaning the interpreted statute had from the time of its enactment. St. Paul Fire & Marine, 609 So.2d at 817.
In our examination of Act 1085 of 1999, we do not find that it creates a new right or duty as the appellants suggest. We have reviewed the legislation and its history, and it is clear that the legislature intended to penalize vehicles in operation which did not have insurance. It did not intend to penalize vehicles which were not in operation. Clearly, a non-operating vehicle is no danger to the motoring public and, thus, is not "in play" for purposes of the no pay, no play statute. Accordingly, we hold that the provision is interpretative and clarifies the meaning of the statute.
For the above reasons, we hold that this provision applies retroactively; thus, it applied to the statute at the time of the accident. Therefore, Rogers is not barred from recovery under this statute, and the appellants' first assignment of error is without merit.

SECOND ASSIGNMENT OF ERROR
In their second assignment of error, Continental and Michener contend that the trial court committed legal error in using the estimated cost of repair as the measure for damages for a vehicle whose value was less than the cost to repair it.
The appellants contend that the fair market value of Rogers' vehicle was $300.00 and that the $1,179.36 awarded for its repairs was excessive. They assert that the vehicle was a total loss, and that she should not receive more than $300.00. The appellants argue that Rogers is only entitled to the market value of the vehicle before the accident less any salvage value.
Although we have determined in some instances that the fair market value before the accident less any salvage value was an accurate measure of damages, no mechanical rule can be applied with exactitude, but each case must be decided on its own facts and circumstances. Alpha Alpha, Inc. v. Southland Aviation, 96-928 (La.App. 3 Cir.), 697 So.2d 1364. In fact, in order to maintain the flexibility necessary to promote substantial justice to all parties in each instance, the measure of damages to be used by the court must be one best fitted to the particular facts of each case. Roshong v. Travelers Insurance Company, 281 So.2d 785, 789 (La. App. 3 Cir.1973).
*867 In this instance, the appropriate measure of property damage to be applied was determined by the Louisiana Supreme Court in Coleman v. Victor, 326 So.2d 344 (La.1976). The Court determined:
When property is damaged through the legal fault of another, the primary objective is to restore the property as nearly as possible to the state it was in immediately preceding the damage; it is well settled that the measure of damage is the cost of restoring the property to its former condition. In assessing damage to the property, generally, courts have considered the cost of restoration as the proper measure of damage where the thing damaged can be adequately repaired.
Id. at 346, 347.
At the trial, the appellee introduced an estimate for parts and labor required to fix her vehicle. Further, Mr. Mark Vander-water was offered at the trial as an expert witness in automobile repair, and he testified that he personally examined the vehicle. Through his examination, he estimated that it would cost $1,179.36 to restore the vehicle to its pre-accident state. He also testified that this would be a reasonable estimate for repairs. Further, there was proof that the vehicle could adequately be repaired.
The appellants did not offer any evidence to show the value of the vehicle or an estimate for repairs. Thus, we will rely on the evidence presented by the appellee. We conclude that the damage assessment of the trial court was fair. The appellee is entitled to the $1,179.36, and the appellants' second assignment of error is without merit.

THIRD ASSIGNMENT OF ERROR
In their third assignment of error, Continental and Michener allege that the trial court committed legal error in finding that a failure to pay a disputed insurance claim within 14 days constituted a failure to adjust a claims as required by La.R.S. 22:658(A)(3). This statute provides in relevant part:
Except in the case of catastrophic loss, the insurer shall initiate loss adjustment of a property damage claim and of a claim for reasonable medical expenses within fourteen days after notification of loss by the claimant.... Failure to comply with the provisions of this Paragraph shall subject the insurer to penalties provided in R.S. 22:1220.
First, La. R.S. 22:658(A)(3) requires that the insurance company initiate loss adjustment of their claims within fourteen days after notification of the loss. We feel this statute, by its very terms, applies to a third party claimant. Continental argues that it did initiate loss adjustment in a timely manner. To support its contention, Continental offered the affidavit of Francine Lynn, a claims representative of Continental who handled the claim. In her affidavit, she stated as follows:
The claim was reported to Continental on 11/11/99....
I began handling the claim on 11/12/99. On that occasion, I contacted Tanya Rogers by phone and was told generally how the accident happened. Claimant related that the insured told her he was working on drive shaft ... Claimant also said police officers came to scene. Claimant related that her vehicle had damage ... Claimant also stated that she didn't have insurance on her vehicle. I explained to her that in Louisiana there was a "No Pay, No Play" statute....
On 11/12/99, claimant left a voice mail message for me....
On 11/12/99, Rose Anderson with the agent's office called and advised that the *868 insured came to her office and told her generally how the accident occurred.
On 11/16/99, I called claimant on this day and advised her that Louisiana was a "No Pay, No Play" state and that she would receive a denial letter denying the claim.
On 11/17/99, I wrote a letter to the claimant denying the claim ...
In initiating loss adjustment, the insurer must take some substantive and affirmative step to accumulate the facts that are necessary to evaluate the claim. Chatoney v. Safeway Insurance Company, 00-1189, (La.App. 3 Cir. 6/13/01) 2001 WL 665207, ___ So.2d ___. McClendon v. Economy Fire & Casualty Insurance Company, 98-1537 (La.App. 3 Cir. 4/7/99) 732 So.2d 727, 731. Simply opening a file does not satisfy the requirement of La. R.S. 22:658(A)(3) that an insurer initiate loss adjustment.
Continental contends that it did more than simply open a file. Continental feels that there is ample evidence to show it initiated the claims adjustment process and gathered the pertinent facts within a timely period. We disagree. In her answer, the appellee argues that all the claims adjuster did from November 12, 1999, through November 17, 1999, was make and receive phone calls. We agree with the appellee.
It appears that Continental immediately determined that Rogers was not entitled to damages in its first contact with Ms. Rogers on November 12, 1999, when Francine Lynn explained "No Pay, No Play" statute. The only other action taken was an interview with Michener, the insured, by his agent. Five days after her initial contact with Continental, Rogers was told that her claim was being denied under the statute. Continental wrote a denial letter on the following day. Continental did not obtain a copy of the police report or take any other investigative steps. We agree with the appellee's assertions that they spent more time trying to defeat the claim instead of trying to investigate.
Because Continental failed to initiate loss adjustment within fourteen days after notification of loss, we conclude that the penalties provided in La. R.S. 22:1220 are applicable. Louisiana Revised Statute 22:1220 provides in pertinent part:
A. An insurer ... owes to this insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.
B. Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A:
(5) Failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause.
C. In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties against the insurer in any amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater....
Continental breached its duty of good faith and fair dealing to Roger, the claimant. Therefore, the penalty must be applied. When there is no proof of damages in the record for breach of this duty, we shall apply a penalty of $5,000.00 per *869 claimant. See McClendon v. Economy Fire & Casualty Insurance Company, 98-1537 (La.App. 3 Cir. 4/7/99), 732 So.2d 727, 731; Hall v. State Farm Mutual Automobile Insurance Company, 94-867 (La.App. 3 Cir. 5/31/95, 658 So.2d 204). After reviewing the record, there is no proof of damages sustained for breach of the duty imposed; therefore, we agree with the trial court's award of $5,000. We agree with the trial court's assessment of Continental's actions.
For the above reasons, the trial court was correct in applying penalties under the statute. We find the appellants' third assignment of error without merit.

DECREE
Based on the foregoing discussion, we affirm the decision of the trial court. All costs are assessed against Defendant-Appellants, Continental Insurance Company and Brian Michener.
AFFIRMED.