J^DREW, J.
This appeal requires interpretation of the provisions of La. R.S. 32:866, Louisiana’s “No Pay-No Play” statute. The trial court granted the defendants’ motion for summary judgment and rejected property damage claims of the plaintiff, James T. Dallas, Jr., whose parked automobile was sideswiped on the shoulder of Interstate 20. Dallas appealed the trial court’s summary judgment. For the following reasons, we affirm that judgment.
FACTS
There are no genuine issues of material fact in this case. Dallas was driving his Mazda automobile westbound on Interstate 20 in Richland Parish in September 1998 when the vehicle developed mechanical problems. Dallas parked the vehicle on the westbound shoulder of the interstate, and the vehicle was sideswiped later that day by a 1994 Isuzu pickup truck owned by Scott Tractor Company and operated by Thomas Hales. Dallas did not have liability insurance on his Mazda, and the property damage to his vehicle was less than $10,000.
In September 1999, Dallas filed suit against Scott Tractor Company, Thomas *369 Hales, and Transcontinental Insurance Company which insured Scott Tractor Company. In the defendants’ answer, they prayed in pertinent part that Louisiana’s “No Pay-No Play” statute be applied to defeat any liability on their part for the damage to the Mazda pickup truck. The defendants then filed a motion for summary judgment based on the applicability of the “No Pay-No Play” statute. After a hearing on the motion for summary judgment, the trial court agreed with the defendants that the “No Pay-No Play” statutory provisions applied in this case, and the court | ¡.granted the defendants’ motion for summary judgment.
DISCUSSION
The provisions of La. R.S. 32:866(A)(1) state:
There shall be no recovery for the first ten thousand dollars of bodily injury and no recovery for the first ten thousand dollars of property damage based on any cause or right of action arising out of a motor vehicle accident, for such injury or damages occasioned by an owner or operator of a motor vehicle involved in such accident who fails to own or maintain compulsory motor vehicle liability security.
Exceptions to this limitation of recovery, set forth in La. R.S. 32:866(A)(3), apply when the driver of the other vehicle intentionally caused the accident, fled from the scene of the accident, was in the furtherance of the commission of a felony offense at the time of the accident, or was cited for a violation of La. R.S. 14:98 as a result of the accident and was subsequently convicted or pleaded nolo contendere. In 1999, an additional exception was enacted. The provisions of La. R.S. 32:866(H) state that the limitation on recovery does not apply “to any vehicle which is legally parked at the time of the accident.” However, the 1999 amendment did not become effective until January 1, 2000.
The above quoted limitation on recovery was part of the Omnibus Premium Reduction Act of 1997. The legislature set forth its intent for this legislation, and the pertinent portion of the legislative intent for our purposes states:
Whereas motor vehicle accident claims comprise a major portion of the lawsuits filed in Louisiana’s state courts, and whereas the enactment of civil justice reforms and their general applicability have a positive effect toward the reduction of the cost of motor vehicle insurance, the Omnibus Premium Reduction Act of 1997 is designed to achieve a significant ^reduction in the premium rate of motor vehicle insurance by legislating in regard not only to specific motor vehicle accidents and insurance suits, but also to civil law issues of general applicability. A secondary purpose of the Omnibus Premium Reduction Act is to encourage all persons who own or operate motor vehicles on the public streets and highways of this state to comply with the Motor Vehicle Safety Responsibility Law by correcting the imbalances and abuses which are prevalent in Louisiana’s current civil law and motor vehicle insurance systems thereby resulting in a direct cost savings to all citizens of the state of Louisiana.
(Emphasis added.)
The provisions of La. R.S. 32:866(A)(1) are clear enough with one exception. The provisions state that there shall be no recovery for injury or damages “occasioned” by an owner or operator of a motor vehicle involved in an accident who fails to own or maintain compulsory motor vehicle liability security. Although the word “occasioned” ordinarily is a synonym for “caused,” it is obvious from the provisions of La. R.S. 32:866(E) that the legislature is not using *370 the word “occasioned” in its usual manner. The provisions of La. R.S. 32:866(E) state in pertinent part that nothing in Section 866 shall preclude a passenger in a vehicle from asserting a claim to recover damages for injury, death, or loss “which he occasioned, in whole or in part, by the negligence of another person arising out of- the operation or use of a motor vehicle.” Obviously, the legislature’s use of the word “occasioned” in Section 866 is more synonymous with “sustained.” Thus, the provisions of La. R.S. 32:866(A)(1) limit recovery based on any cause or right of action arising out of a motor vehicle accident, for bodily injury or property damage sustained by a vehicle owner or operator who fails to own or maintain compulsory motor vehicle liability security.
|/There is no question in the instant case that the damage to the vehicle owned by Dallas was less than $10,000, and there is no question that the property damage to the vehicle arose out of a motor vehicle accident. Finally, there is no question that Dallas, the owner of the motor vehicle involved in the accident, failed to own or maintain compulsory motor vehicle liability security on the vehicle. Thus, the provisions limiting recovery, on their face, apply to the accident that is the subject of this lawsuit.
We also observe that application of the provisions as written is supported by the stated legislative intent to encourage all persons who own or operate motor vehicles on the public streets and highways of this state to comply with the Motor Vehicle Safety Responsibility Law. While it is true that Dallas was not actually operating his vehicle at the moment of the accident, he owned the motor vehicle in question at the time of the accident, and that vehicle was “on the public streets and highways of this state.” See La. R.S. 32:1(25) and (65).
On appeal, Dallas argues that the “No Pay-No Play” law simply does not apply to parked vehicles for two reasons: (1) the law was not intended to penalize persons whose vehicles are parked, and (2) the 1999 amendment to the law was retroactive. In support of the first reason, Dallas cites Gibbs v. State Farm Mut. Auto. Ins. Co., 99-1242 (La.App. 4th Cir.10/13/99), 746 So.2d 685, writ denied, 1999-3234 (La.1/14/00), 753 So.2d 220. In Gibbs, a vehicle owned by Jeffery Jenkins struck an unoccupied, parked vehicle owned by Shelita Gibbs. The Gibbs vehicle was uninsured. Her car [.¡could not run without more than $1,000 in repairs; therefore, Gibbs parked the inoperative vehicle in front of her house where it was located at the time of the accident. The two-judge majority opinion held that the provisions of La. R.S. 32:866 did not apply to the vehicle. The court noted that the purpose of the statute was to discourage the operation of uninsured vehicles, and that to apply the law to parked vehicles would do nothing toward accomplishing that purpose. A third judge concurred, stating that Gibbs had parked her vehicle in order to comply with the Compulsory Motor Vehicle Liability Security Law, and that for her to sustain damage through no fault of her own would not be fair or just. A fourth judge, also concurring in the result, focused on the word “occasioned” as it appears in Section 866(A)(1). That judge then concluded that it appeared that in order to activate the recovery limitation rule, the owner who let the insurance coverage lapse, or who failed to obtain coverage in the first place, should not be penalized unless the owner “plays an active part in bringing about the injury and damages.” The judge concluded that leaving an inoperable and uninsured vehicle parked in front of one’s home did not constitute taking an active role in bringing about damages to the vehicle.
*371 The fifth judge on the panel dissented, finding the language of the statute clear. The judge also noted the secondary purpose of the Omnibus Premium Reduction Act of 1997 to encourage all persons who ovm or operate vehicles on the public streets and highways of this state to comply with the Motor Vehicle Safety Responsibility Law. The dissenting judge noted that the legislature could have excluded stopped or parked vehicles, |fibut it did not do so. The judge also stated that there was not the slightest suggestion in the wording of either the statute or the Act’s expressed purpose to indicate that the legislature intended to do so. The dissenting judge concluded by noting that under the majority’s reasoning, an uninsured owner could recover if his vehicle was damaged while temporarily parked on a street or highway even though the vehicle was being operated without insurance moments before it was struck.
We agree with the dissenting judge that the language of the statute is clear, and that there is not the slightest suggestion in either the original wording of the statute or the expressed purpose behind the statute to suggest any intent on the part of the legislature to exclude stopped or parked vehicles. On the other hand, we can understand the Gibbs court’s reluctance to apply the statutory provisions under the facts of that case where the owner had parked her vehicle in front of her own home in order to comply with the Compulsory Motor Vehicle Liability Security Law. We can distinguish the rationale employed by the majority of judges in Gibbs in order to reach an equitable result based on the facts of that case, from the rationale we find properly applies to the facts of the instant case. Plainly, Dallas had not parked his vehicle in order to comply with the Compulsory Motor Vehicle Liability Security Law, but had parked his vehicle only because of mechanical problems. But for those problems, he would have continued to drive his vehicle without liability insurance and in violation of the law.
We also note that in addition to the provisions of Section 866(A)(1), 17the provisions of Section 866(B) and (C) also show that the limitation on recovery is not linked to the uninsured owner or operator’s fault for the accident. The limitation applies even if the owner or operator of the uninsured vehicle is totally without fault in causing the accident, and there is nothing in the statutory language from which one can properly infer that the legislature did not intend the law to apply unless the uninsured person bore some measure of fault. Nor do we agree that the owner or operator must at least play an “active part” in bringing about the injury and damages. As previously noted, we believe the wording of the statute shows that the word “occasioned” as used in the statute is synonymous with “sustained.” Accordingly, we find no reason to depart from the clear wording of the statute in search of a rationale that would allow recovery by the plaintiff in the instant case based on an interpretation seeking the legislative intent. To the contrary, given the plain wording of the statute and the clearly stated statutory intent, we find no valid basis for legally distinguishing between two individuals who both are owners of uninsured vehicles and who both are without fault in causing an accident, but one individual is operating his vehicle on the public highway while the other has temporarily parked his vehicle on the shoulder due to mechanical difficulties. The same would be true of two uninsured vehicle owners who lent their vehicles to two drivers, one of whom was without fault in an accident that occurred while the borrowed vehicle was moving, and the other who was without fault in an accident that occurred *372 while the borrowed vehicle was parked on the shoulder of the public highway.
| ¡¡Finally, we come to the question of the retroactivity of the 1999 amendment to the “No Pay-No Play” law. In Rogers v. Commercial Union Ins. Co., 2001-433 (La.App. 3d Cir.10/3/01), 796 So.2d 862, the court, like the court in Gibbs, supra, refused to apply the “No Pay-No Play” law to a parked vehicle. The vehicle in question was parked in a private parking lot at the time of the accident, and the appellate court concluded, citing Gibbs, that the statute did not apply to legally parked vehicles. However, the court went further to hold that the provisions of the 1999 amendment applied retroactively. On the question of retroactivity, the court observed that under the provisions of La. C.C. art. 6, in the absence of a contrary legislative expression, substantive laws apply prospectively only, while procedural and interpretative laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary. The court in Rogers found no legislative expression of an intent regarding the retrospective or prospective application of the amendment, and then proceeded to classify the amendment as interpretive. This classification was based on the court’s conclusion that the legislature clearly intended to penalize vehicles in operation which did not have insurance, but not vehicles which were not in operation. The court stated that a non-operating vehicle was no danger to the motoring public, and thus, was not “in play” for purposes of the “No Pay-No Play” statute.
We must disagree with the Rogers court on the applicability of the 1999 amendment to accidents occurring before the effective date of the amendment. Although the result in that case is at least arguably correct 1¡because the vehicle at issue was not on a public street or highway of this state at the time of the accident, and while we agree that a nonoperating vehicle ordinarily is no danger to the motoring public, we observe that there is nothing in the statute to indicate that “danger” to the motoring public is the focus of the statute, just as fault is not the focus. Instead, the legislature plainly was concerned about individuals who broke the law by placing uninsured vehicles on the public streets and highways of this state where the vehicles could be involved in accidents, thereby creating insurance claims. The legislature did not want such individuals to be able to fully utilize the insurance protection of other individuals who did not break the law, but who instead purchased and maintained the required insurance coverage. Without question, that is the very reason for the name “No Pay-No Play” by which the statute is popularly known. The “Play” is not the driving of the vehicle, but the attempt to fully benefit from the insurance coverage of others, while breaking the law by not purchasing one’s own coverage (“No Pay”). Insurance coverage applies not only to moving vehicles, but also to parked vehicles.
If anything is unclear about the “No Pay-No Play” law, it is why the legislature chose to add an exclusion for “legally parked” vehicles. Perhaps it is the interpretation of the term “legally parked” that is the source of the problem. One can argue that an uninsured automobile cannot be “legally parked” on a public street or highway. Certainly, if the headlights of such a vehicle blinded an insured motorist and contributed to an accident between the two vehicles, it would be ironic for the owner of the uninsured vehicle to |,nhave coverage available, while the insured owners’ only available coverage would be his own UM coverage, if any. Of course, the law has a punitive element, so there can be little doubt that if the accident at issue in *373 this case had occurred today, we would have no choice but to reverse the trial court’s decision because the statutory restriction on recovery must be narrowly construed. A narrow construction, in turn, would require a broad reading of the exception for legally parked vehicles. However, the accident in this case not only occurred prior to the effective date of the amendment, but prior to the passage of the act that contained the amendment.
The amendment came about through Act 1085 of 1999, Section 1 of which amended La. R.S. 32:866. Section 2 provided that the act would become effective on January 1, 2000. While the legislature’s setting of a future effective date for the act’s provisions is not necessarily conclusive on the question of whether the addition of an exception for “legally parked” vehicles is substantive as opposed to interpretive, the choice of a future effective day certainly weighs much more heavily on the side of concluding that the act’s provision should have prospective effect only. Furthermore, when we consider both the plain language of the statutory provisions before the amendment, as well as the stated intent of the legislature, all as previously discussed above, we conclude that the provisions of La. R.S. 32:866(H) do not apply in this case. Accordingly, we agree that summary judgment was appropriate in favor of the defendants under these facts.
CONCLUSION
For the reasons set forth above, the trial court’s judgment is AFFIRMED at appellant’s costs.