11 TERRI F. LOVE, Judge.
Defendant, Allstate Insurance Company, seeks review of the trial court’s judgment holding that La. R.S. 32:866 does not apply to the spouse of an owner/operator of an unregistered and uninsured vehicle when the spouse’s name is not on the title or bill of sale.
Plaintiff, Antoinette Lewis, was a passenger in a vehicle owned and operated by her husband when the vehicle was struck in the rear by a vehicle owned and operated by Leroy Miller, who was insured by Allstate Insurance Company. The plaintiff sued Miller and Allstate seeking damages for the injuries she allegedly sustained in the accident. Plaintiff dismissed Miller from the action immediately prior to trial but reserved her rights against Allstate Insurance Company. Allstate argued at trial that La. R.S. 32:866 prevents the plaintiff from recovering any damages for her alleged injuries. After a bench trial, the trial court rendered judgment in favor of the plaintiff and awarded $8500.00 in general damages and $1636.00 in special damages. In its reasons for judgment, the trial court stated that it “granted judgment for the plaintiff, because she was not the owner on the bill of sale. The law did not address this issue and the Court assumed that the legislative intent was not to exclude the spouse, if he or she was not the registered owner of the vehicle.”
LOn appeal, the defendant assigns two errors:
(1) Instead of giving the term “owner” its generally prevailing meaning, the trial court held that the term “owner” in the Omnibus Premium Reduction Act did not include a spouse/ guest passenger in her community property owned car because the spouse was not referenced on the bill of sale or as the registered owner.
*630 (2) The trial court erred in entering a judgment in favor of the plaintiff and against Allstate, as the insurer, pursuant to the Louisiana Direct Action Statute, La. R.S. 22:655, that exceeded Allstate’s policy limits of $10,000.
La. R.S. 82:866 provides:
(A)(1) There shall be no recovery for the first ten thousand dollars of bodily injury and no recovery for the first ten thousand dollars of property damage based on any cause or right of action arising out of a motor vehicle accident, for such injury or damages occasioned by an owner or operator of a motor vehicle involved in such accident who fails to own or maintain compulsory motor vehicle liability security, (emphasis added.)
La. R.S. 32:1(45) defines “owner” as
A person who holds a legal title to a vehicle or in the event a vehicle is the subject of an agreement for the conditional sale, lease or transfer of possession thereof with the right of purchase upon the performance of the conditions stated in the agreement, with the right of immediate possession in the vendee, lessee, possessor, or in event such similar transaction is had by means of mortgage and the mortgagor of a vehicle is entitled to possession, then the conditional vendee, lessee, possessor or mortgagor shall be the owner for purposes of this Chapter.
When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. La. C.C. art. 9. When the language of a law is susceptible of different meanings, however, it must be interpreted as having the meaning that best conforms to the purpose of the law, and the meaning of ambiguous words must be sought by examination of the context in which they occur and the text of the law as a whole. Louisiana Smoked Products, Inc. v. Savoie’s Sausage and Food Products, Inc., 96-1716 (La.7/1/97), |a696 So.2d 1373. Where a statute is ambiguous and susceptible of two constructions, the courts will give that construction which best comports with the principles of reason, justice, and convenience, for it is to be presumed that the legislature intended such exceptions to its language as would avoid its leading to injustice, oppression, or absurd consequences. Freechou v. Thomas W. Hooley, Inc., 383 So.2d 337 (La.1980).
A paramount consideration in interpreting a statute is ascertaining the legislature’s intent and the reasons that prompted the legislature to enact the law. Theriot v. Midland Risk Ins. Co., 95-2895 (La.5/20/97), 694 So.2d 184. One particularly helpful guide in ascertaining the intent of the legislature is the history of the statute in question and related legislation. Id. Where there is any doubt about the intent or meaning of a law in derogation of long accepted rules, the statute is given the effect that makes the most change in the existing body of the law. Touchard v. Williams, 617 So.2d 885 (La.1993). Finally, our interpretation of the meaning of a statute should be guided by the jurisprudential rule that we not impute a meaning which would lead to an absurd result. Id.
The Louisiana Supreme Court, in Progressive Sec. Ins. Co. v. Foster, 97-2985, pp. 2-14 (La.4/23/98), 711 So.2d 675, 679-684, reviewed the history and the purposes of the Omnibus Premium Reduction Act of 1997:
In 1996, Governor Murphy J. Foster appointed the Louisiana Task Force for Reduction of Automobile Insurance Rates (Task Force) which was staffed by the LIRC. Pursuant to its mandate, the *631 Task Force appointed the Actuarial Subcommittee to analyze the cost of various automobile insurance reform proposals generated from the Task Force. The Actuarial Subcommittee was comprised of the Chairman of the Department of Insurance, together with representatives from C N A Insurance Companies, Allstate Insurance Companies, State Farm Insurance Companies, Louisiana Farm Bureau Insurance Companies, and LA-FAC.
Operating with a deadline of March 5, 1997, the Task Force instructed the Actuarial Subcommittee to review the various proposals submitted, Lselect and prioritize the five proposals which provided the greatest estimated actuarial savings, and issue a report on its findings. Although the Task Force referred approximately 43 proposals to the subcommittee for actuarial assessment, the Actuarial Subcommittee analyzed ten proposals. ‘No pay, no play’ was one of the proposals analyzed and was legislatively implemented in Act 1476, the Omnibus Premium Reduction Act of 1997.
[[Image here]]
In Section 1 of the Omnibus Premium Reduction Act of 1997 the legislature enunciated two broad purposes for the legislation: (1) ‘to reduce otherwise recoverable damages for failure to maintain liability insurance coverage’ and (2) to ‘encourage all persons who own or operate motor vehicles on the public streets and highways of this state to comply with the Motor Vehicle Safety Responsibility Law.’
Section 1 of Acts 1997, No. 1476 states:
The provisions of this Act shall be known as the ‘Omnibus Premium Reduction Act of 1997.’ Whereas motor vehicle accident claims comprise a major portion of the lawsuits filed in Louisiana’s state courts, and whereas the enactment of civil justice reforms and their general applicability have a positive effect toward the reduction of the cost of motor vehicle insurance, the Omnibus Premium Reduction Act of 1997 is designed to achieve a significant reduction in the premium rate of motor vehicle insurance by legislating in regard not only to specific motor vehicle accidents and insurance suits, but also to civil law issues of general applicability. A secondary purpose of the Omnibus Premium Reduction Act is to encourage all persons who own or operate motor vehicles on the public streets and highways of this state to comply with the Motor Vehicle Safety Responsibility Law by correcting the imbalances and abuses which are prevalent in Louisiana’s current civil law and motor vehicle insurance systems thereby resulting in a direct cost savings to all citizens of the state of Louisiana.
Thus, the question of law before this Court is whether the legislature intended “owner” of a vehicle to be defined by La. R.S. 32:1(45) or to encompass a broader definition given the laws of community property. The defendant contends that the definition of “owner” should include the spouse of a person named on the vehicle’s title if they have a community property regime. The defendant relies upon cases from the First Circuit and the Third Circuit which held that the spouses, 1 swho were not named as the registered owners of the community vehicles, which were registered in the other spouses’ names, were owners of the vehicle subject to the uninsured motorist exclusions contained in the policy covering the spouses since the polices did not list the community vehicles as “covered automobiles.” See lies v. American Mfr. Mut. Ins. Co., 93-1149 (La.App. 3 Cir. 5/4/94), 640 So.2d 451;
*632 Pelletier v. Colonial Lloyds, 94-0363 (La.App. 1 Cir. 12/22/94), 649 So.2d 31. The Third Circuit held in lies that the definition of owner in La. R.S. 32:1 did not apply. The Court stated:
This definition (La. R.S. 32:01) is clearly limited to an introductory provision which ascribes its meaning to ‘owner’ as appears in that title captioned ‘Motor Vehicle and Traffic Regulations.’ We are convinced the term as defined does not supersede the meaning of ‘owner’ as interpreted and defined in several Louisiana Civil Code articles and other statutory provisions.
Res, p. 3, 640 So.2d at 452.
In reaching its decision, the court in Res looked to La. C.C. art. 2336 which states that “[e]aeh spouse owns a present undivided one-half interest in the community property.”
This Court has not yet considered this issue presently before it. However, this Court interpreted another part of La. R.S. 32:866 to allow an uninsured vehicle owner to recover for property damages. In Gibbs v. State Farm, Mut. Auto. Ins. Co., 99-1242 (La.App. 4 Cir. 10/13/99), 746 So.2d 685, this Court held that La. R.S. 32:866 did not apply to a parked vehicle and therefore, did not prevent the uninsured owner from recovering property damages from a tortfeasor who struck the vehicle.
A review of the statutory law concerning the registration of vehicles also provides insight into the legislative intent of the statute. La. R.S. 32:861(A)(2) ^states that “it shall be the duty of the registered owner of a motor vehicle to maintain” automobile liability insurance with liability limits as defined in La. R.S. 32:900(B)(2). Likewise, La. R.S. 32:51 provides that “[n]o person shall operate, or permit to be operated, any motor vehicle upon the highways of this state unless it is registered with the commissioner, the license tax is paid thereon, and it is operated in accordance with the provisions of this Chapter and other laws of this state.” The “owner of a motor vehicle” is the person who is required to register the vehicle. La. R.S. 47:501. For purposes of La. R.S. 47:501, “owner” is defined in La. R.S. 47:451 as:
A person who holds the legal title to a vehicle or in the event a vehicle is the subject of an agreement for the conditional sale, lease, or transfer of the possession, however, thereof with the right of purchase upon performance of the conditions stated in the agreement and with the right of immediate possession vested in such vendee, lessee, possessor, or in the event such similar transaction is had by means of mortgage and the mortgagor of a vehicle is entitled to possession, then such conditional vend-ee, lessee or possessor or mortgagor shall be deemed the owner for the purpose of this Chapter. The term ‘owner’ shall also mean the lessee or user of a vehicle which is legally in the custody of such lessee or user.
In the case at bar, the plaintiff was a user who had legal custody of the vehicle. Although only the plaintiffs husband’s name was on the bill of sale, the plaintiff had legal custody of the vehicle by virtue of the community property laws of the state of Louisiana. As stated above, La. C.C. art. 2336 provides that “[e]ach spouse owns a present undivided one-half interest in the community property.” Thus, both plaintiff and her husband had the obligation to register the vehicle with the State of Louisiana. As a registered owner, she also had the responsibility to obtain and maintain automobile liability insurance on the vehicle. Since she and her husband failed to obtain the minimum liability limits, she should not able to recover for the first ten thousand dollars worth of dam *633 ages for bodily injuries and |7property damage. Other community property laws also support this conclusion. See La. C.C. art. 2344.
Therefore, we find that the trial court erred when it granted judgment in favor of the plaintiff awarding her damages in the amount of $10, 136.00. Plaintiff is barred from receiving the first ten thousand dollars of her damages. The trial court judgment is amended to award plaintiff damages in the amount of $136.00.
AFFIRMED AS AMENDED.