Judgment rendered May 22, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,630-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

EMPLOYERS MUTUAL                         Plaintiff-Appellee
CASUALTY COMPANY

versus

JOSEPH T. LOFTON AND                     Defendants-Appellants
NATASHA STARKS

* * * * *

Appealed from the
Shreveport City Court for the
Parish of Caddo, Louisiana
Trial Court No. 2018R07288

Honorable Emily Merkle, Judge

* * * * *

D. F. JACKSON AND ASSOCIATES, LLC        Counsel for Appellants,
By: Dorothy F. Jackson                   Sincere Client Care
                                         Services, LLC and
                                         Andrea Baxter, Agent

COOK, YANCY, KING & GALLOWAY             Counsel for Appellee
By: Jordan B. Bird

* * * * *

Before STONE, MARCOTTE, and ELLENDER, JJ.

MARCOTTE, J., concurs with reasons set forth by J. Ellender.

ELLENDER, J., concurs in the results and assigns reasons.

**STONE, J.**

## FACTS AND PROCEDURAL HISTORY

This is a debt collection suit arising from the Shreveport City Court, the Honorable Emily Merckle presiding. Employers Mutual Casualty Company ("appellee") is the plaintiff suing as subrogee regarding damages it paid as a result of a motor vehicle collision. The appellee obtained a default judgment against: (1) the tortfeasor-driver Joseph Lofton, an uninsured motorist; and (2) Natasha Starks, who owned the vehicle that Lofton was driving, but did not have liability insurance thereon.

Thereafter, the appellee filed a garnishment petition against Sincere Client Care Services, LLC (the "appellant"), in its capacity as employer of Natasha Starks. The record indicates that, on December 16, 2020, the garnishment petition and garnishment interrogatories were served on Andrea Baxter ("Baxter") in her capacity as registered agent for appellant. The record does not reflect the filing of any answer or responses to the interrogatories until October 7, 2022, and March 1, 2023.

On February 5, 2021, the appellee filed a rule for judgment pursuant to La. C.C.P. art. 2413 (hereinafter, "judgment pro confesso") requesting the entire amount of the underlying judgment plus fees and costs. Baxter appeared at the hearing and stated that Natasha Starks did not earn enough to legally garnish and obtained a continuance to allow her time to hire an attorney. The trial court granted a lump sum judgment pro confesso against the appellant for the full amount of the underlying judgment against debtor Natasha Starks; this judgment was signed on May 3, 2021, and notice of it

was mailed to appellant on May 5, 2021. However, this judgment does not name the appellee (or anyone else) as the party to whom the award is made.[1]

On August 4, 2021, the appellee filed a rule to examine the appellant as judgment debtor under the judgment pro confesso, and service was made on Baxter. The matter was set for hearing on December 8, 2021, and nobody appeared on behalf of appellant. A warrant for Baxter's arrest for direct contempt of court was issued setting a cash bond in the amount of $1,000. The warrant commands the city marshal to arrest Baxter to have her "before our said court to answer to the charge Statute: C.C.P. 222 CONTEMPT OF COURT therein pending against [her]…on [January 19, 2022] and to post a CIVIL cash bond of $1,000." It was not served on her until over 9 months later, on September 1, 2022; served along with the arrest warrant was an order resetting the contempt hearing date for October 26, 2022.[2] Upon service of the warrant, Baxter posted the bond (apparently by tendering a $1,000 check which was in possession of appellee's attorney as of the hearing on February 13, 2023).

On October 7, 2022, a letter was filed on behalf of the appellant stating that Natasha Starks had been rehired by the appellant but had only received one paycheck, which was not enough to be legally garnished and had not returned to work since receiving that paycheck.

On October 13, 2022, over a year after the judgment pro confesso was served, the appellant filed a motion to reopen and vacate the judgment pro

_____

[1] In this case, the judgment pro confesso does not name the party to whom relief is granted, and therefore, lacks necessary decretal language; in the event it remains in effect after due proceedings on remand, it must be amended. La. C.C.P. arts. 1918 & 1951.

[2] Footnote 3 explains how the arrest warrant and bond were adjudicated on October 26, 2022, but these decisions were later vacated and re-adjudicated.

2

confesso, which, ultimately, the trial court treated as a motion for new trial and denied as untimely.[3] In that same judgment, the trial court also granted the appellee's oral motion to forfeit the bond posted by Baxter. This judgment was signed on February 22, 2023. On March 1, 2023, appellant finally filed and served its responses to the garnishment interrogatories (detailed *infra*). However, the appellant's next filing was a notice of intent to apply for supervisory writ and motion to set return date; we granted the writ and docketed it as an appeal.

Appellant specifies three errors: (1) the trial court erred in applying the deadline for motions for new trial because it had continuing jurisdiction pursuant to La. R.S. 13:3923; that continuing jurisdiction gave the trial court authority to reopen the garnishment proceeding; (2) the trial court should have granted the motion to reopen garnishment; and (3) the trial court erred in ordering the bond forfeited because there was no "formally urged" motion and Baxter was present with counsel at the time.

## DISCUSSION

### Motion to vacate judgment pro confesso

As explained below, we find that the trial court committed prejudicial legal error in holding that the appellant's motion pursuant to La. R.S.

---

[3] Judge Merckle allegedly signed an order setting hearing on the October 13, 2022, motion to vacate judgment for November 30, 2022; however, the record does not contain such order, but merely contains returns reflecting October 19, 2022, service on appellee and its attorney of an unspecified rule set for an unspecified date. However, Judge Barber heard and denied the motion to vacate judgment on October 26, 2022, and ordered the bond forfeited and applied to the debt; Judge Barber signed a judgment to that effect on November 4, 2022; however, on November 10, 2022, Judge Barber signed an order vacating the judgment pursuant to La. R.S. 13:4209. The matter was reset for hearing before Judge Merckle, who signed a judgment denying the motion to vacate on February 22, 2023. In that same judgment, Judge Merckle also ordered forfeiture of the $1,000 bond posted by Baxter.

13:3923(A) was time-barred.  From that point, our course is set by *Evans v. Lungrin*, 97-0541 (La. 2/6/98), 708 So. 2d 731, 735:

> [W]here one or more trial court legal errors interdict the fact-finding process, the manifest error standard is no longer applicable, and, if the record is otherwise complete, the appellate court should make its own independent *de novo* review of the record and determine a preponderance of the evidence. A legal error occurs when a trial court applies incorrect principles of law and such errors are prejudicial…When such a prejudicial error of law skews the trial court's finding of a material issue of fact and causes it to pretermit other issues, the appellate court is required, if it can, to render judgment on the record by applying the correct law and determining the essential material facts *de novo.* (Internal citations omitted).

**Wage garnishment threshold**

For each weekly paycheck of a judgment debtor, La. R.S. 13:3881(A)(1) exempts from garnishment an amount equal to thirty times the federal minimum hourly wage in effect at the time the wages are payable.  From July of 2009 to present day, the federal minimum hourly wage has been $7.25. 29 U.S.C.A. § 206(a)(1). Accordingly, there can be no wage garnishment when the debtor's weekly earnings do not exceed $217.50.

**Judgment "pro confesso" under La. C.C.P. art. 2413**

La. C.C.P. art. 2413 is titled "Effect of garnishee's failure to answer." In relevant part, it states:

> A. If the garnishee fails to answer within the delay provided by Article 2412, the judgment creditor may proceed by contradictory motion against the garnishee for the amount of the unpaid judgment, with interest and costs…*The failure of the garnishee to answer prior to the filing of such a contradictory motion is prima facie proof that he has property of or is indebted to the judgment debtor to the extent of the judgment, interest, and costs.*
> B. *Judgment shall be rendered against the garnishee on trial of the motion unless he proves that he had no property of and was not indebted to the judgment debtor.*

4

If on the trial of such motion, the garnishee proves the amount of such property or indebtedness, the judgment against the garnishee shall be limited to the delivery of the property or payment of the indebtedness, as provided in Article 2415. (Emphasis added).

**Reopening of wage garnishment judgment pursuant to La. R.S. 13:3923**

During the pendency of this case, there has been an amendment to La. R.S. 13:3923 whereby paragraph (B) was added as underlined in the following block quotation. This amendment was approved in June of 2022, and became effective in August of 2022. In pertinent part, La. R.S. 13:3923 states:

> A. …It shall not be necessary that more than one writ of garnishment or one set of interrogatories be served in a garnishment proceeding, but the court shall render judgment for the monthly, semimonthly, weekly, or daily payments to be made to the seizing creditor according to the manner best suited to the circumstances, until the indebtedness is paid. …The court, in its discretion, may reopen the case upon the motion of any party concerned for evidence affecting the proper continuance of the garnishment judgment, and the court shall retain jurisdiction to amend or set aside its garnishment judgment at any time in its discretion…[Additionally,][s]hould judgment by default be taken against any party garnishee, he may obtain a reopening of the case upon proper showing and within the discretion of the court.
>
> B. Nothing in this Section is meant to affect judgments rendered pursuant to the Code of Civil Procedure Article 2413.

Paragraph (B) of La. R.S. 13:3923 became effective in August of 2022 and by its terms bars application of paragraph (A) to a judgment pro confesso. However, recent Louisiana Supreme Court jurisprudence holds implicitly that La. R.S. 13:3923(B) is not retroactive, i.e., does not apply to judgments pro confesso rendered prior to August of 2022. After the effective date of La. R.S. 13:3923(B), the Louisiana Supreme Court, in

*Tower Credit, Inc. v. Williams,* 22-01556 (La. 2/7/23), 354 So. 3d 659, 660,

declined to apply it to a judgment pro confesso which had been rendered

*before* the effective date. Instead, the court explicitly applied La. R.S.

13:3923(A) to the judgment pro confesso, stating *in toto*:

> Writ granted. Based on the particular facts of this case
> and considering La. R.S. 13:3923(A), that part of the
> judgment *pro confesso* against Louisiana Fish Fry
> Products, Ltd. representing the amount of the unpaid
> judgment, with interest and costs, is vacated, and the
> motion to re-open the garnishment proceeding is granted.
> The matter is remanded to the district court for further
> proceedings.

*Id.*

The facts and procedural history are recited in the First Circuit's

opinion on the case. *Tower Credit, Inc. v. Williams*, 2022-0106 (La. App. 1

Cir. 9/16/22), 352 So. 3d 1029, 1032.[4] The trial court denied the motion to

reopen and vacate judgment pro confesso, and the First Circuit affirmed that

decision. Citing La. R.S. 13:3923(A), the Louisiana Supreme Court

reversed the denial of the motion to reopen and vacate the judgment pro

confesso and vacated the judgment pro confesso.

In this case, we hold that La. R.S. 13:3923(B) does not apply because

such would constitute a retroactive application of substantive law, which is

constitutionally prohibited. This conclusion is necessarily implied by the

Supreme Court's decision in *Tower Credit, supra*. "Generally, the

determinative point in time separating prospective from retroactive

---

[4] The garnishee was alleged to be the employer of the judgment debtor. The garnishee failed to answer the garnishment petition and interrogatories, which were served November 6, 2020, and did not appear at the contradictory hearing on the rule for judgment pro confesso. The creditor obtained a judgment pro confesso on October 6, 2021,[4] notice of which was mailed to garnishee the following day. After receiving notice thereof on October 13, 2021, the garnishee filed a motion to vacate the garnishment judgment on October 22, 2021,

6

application of an enactment is the date the cause of action accrues. Once a party's cause of action accrues, it becomes a vested property right that may not constitutionally be divested." *Cole v. Celotex Corp.*, 599 So. 2d 1058, 1063 (La. 1992). "Absent a conclusive expression of legislative intent [regarding whether the new law is to be applied retroactively], we must proceed to classify the amendment pursuant to LSA–C.C. Art. 6 as either substantive, procedural or interpretive." *St. Paul Fire & Marine Ins. Co. v. Smith*, 609 So. 2d 809, 817 (La. 1992). Regarding substantive legislation and interpretive legislation, the court stated:

> Substantive laws either establish new rules, rights, and duties or change existing ones. Interpretive laws, on the other hand, do not create new rules, but merely establish the meaning that the interpretive statute had from the time of its enactment. It is the original statute, not the interpretive one, that establishes the rights and duties.

*Id.* "Procedural laws prescribe a method for enforcing a substantive right and relate to the form of the proceeding or the operation of the laws." *Rousselle v. Plaquemines Par. Sch. Bd.,* 633 So. 2d 1235, 1244 (La. 1994).

The Supreme Court's decision in *Tower Credit I, supra,* necessarily implies that the rendition of the judgment pro confesso is the point at which the garnishee's cause of action accrues under La. R.S. 13:3923(A), and La. R.S. 13:3923(B) is substantive because it divests the garnishee of the right to have the judgment revised or vacated. In light of La. R.S. 13:3923(A), the trial court erred in holding that the motion to reopen the judgment pro confesso was untimely.[5]

---

[5] The appellee argues that *Tower Credit I* is distinguishable because, in the instant case, the motion to vacate judgment pro confesso was filed after the expiration of new trial delays, whereas, in *Tower Credit I*, the motion was filed within those delays. From that premise, the appellee essentially argues that the Louisiana Supreme Court tacitly reclassified the garnishee's motion made pursuant to La. R.S. 13:3923(A) as a (meritorious) motion for new trial and avoided contravention of newly enacted La. R.S.

The trial court did not reach the merits of the motion to reopen and vacate the judgment pro confesso, and thus did not hold an evidentiary hearing thereon. For that reason, the record is not complete, and we cannot undertake de novo review of the merits of the motion to vacate. *Evans, supra.* This matter must be remanded for a full evidentiary hearing on the motion to reopen and vacate the judgment pro confesso.

### Bond forfeiture

The appellant correctly points out that the forfeiture of a bond is subject to the rules governing contempt proceedings, and in this case forfeiture of the $1,000 civil cash bond was invalid because the contempt procedure was not satisfied. The appellee does not respond to the assignment of error regarding forfeiture of the bond.

La. C.C.P. art. 2456 sets forth the procedure for contempt for failure of a judgment debtor to appear for judgment debtor examination:

> If the motion and order have been served personally on the judgment debtor, as provided by law or if service is obtained pursuant to Article 1261, and the judgment debtor refuses to appear for the examination or to produce his books, papers, or other documents when ordered to do so, or if he refuses to answer any question held pertinent by the court, *the judgment debtor may be punished for contempt.* (Emphasis added).

"Contempts of court are of two kinds, direct and constructive." La. C.C.P. art. 221. In relevant part, La. C.C.P. art. 222 defines *direct* contempt as including "a *contumacious* failure to comply with a subpoena or summons, proof of service of which appears of record." (Emphasis added).

La. C.C.P. art. 223 allows punishment of direct contempt as follows:

13:3923(B) on that basis. That argument is without merit because the Supreme Court explicitly invoked La. R.S. 13:3923(A) as authority for its ruling; furthermore, it vacated the judgment pro confesso—it did not grant a new trial.

8

A person who has committed a direct contempt of court may be found guilty and punished therefore by the court forthwith, without any trial other than affording him an opportunity to be heard orally by way of defense or mitigation. *The court shall render an order reciting the facts constituting the contempt, adjudging the person guilty thereof, and specifying the punishment imposed.* (Emphasis added).

La. C.C.P. art. 224 defines *constructive* contempt as "any contempt other than a direct one," and including "[w]ilful disobedience of any lawful…order…of the court." La. C.C.P. art. 225, in relevant part, sets forth the procedure for punishing constructive contempt:

A. Except as otherwise provided by law, a person charged with committing a constructive contempt of court may be found guilty thereof and punished therefor only after the trial by the judge of a rule against him to show cause why he should not be adjudged guilty of contempt and punished accordingly. The rule to show cause may issue on the court's own motion or on motion of a party to the action or proceeding and shall state the facts alleged to constitute the contempt…[A] certified copy of the motion, and of the rule to show cause, shall be served upon the person charged with contempt in the same manner as a subpoena at least forty-eight hours before the time assigned for the trial of the rule.
B. If the person charged with contempt is found guilty the court shall render an order reciting the facts constituting the contempt, adjudging the person charged with contempt guilty thereof, and specifying the punishment imposed.

La. R.S. 13:4611 provides the authorized penalties for persons adjudged guilty of contempt. It only allows a fine of up to $500 as punishment for contempts such as failure to appear when subpoenaed. La. R.S. 13:4611(d)(i). It also authorizes, "[f]or a deliberate refusal to perform an act which is yet within the power of the offender to perform, [punishment] by imprisonment until he performs the act." La. R.S. 13:4611(c).

The plain language of La. C.C.P. art. 222 demonstrates that mere failure to appear when subpoenaed is not contempt. Only *contumacious* failure to comply with a subpoena is a direct contempt. To allow direct contempt to be established automatically via non-appearance after proper service would render the prima facie requirement of contumaciousness a nullity and place the burden on the defendant to prove his or her non-appearance was not contumacious. We refuse to allow such a construction of penal legislation. The court did not have any evidentiary basis for deeming Baxter's non-appearance a *contumacious* failure to comply with a subpoena, and this is fatal to the tacit adjudication of direct contempt under La. C.C.P. 222 (which is manifested in the forfeiture of the bond). Furthermore, the arrest warrant does not satisfy the requirement of La. C.C.P. art. 222 that the court issue an order reciting the facts constituting the contempt. This also is fatal.

*Willful* disobedience of a subpoena is a constructive contempt subject to the procedure set forth in La. C.C.P. art. 225(A). The court did not follow the required procedure for constructive contempt, nor did it have evidence of willfulness. These defects are likewise fatal. For these reasons, the trial court's implied adjudication of contempt against Baxter in contempt was erroneous even if it were construed as a constructive contempt.

Furthermore, per the language of the arrest warrant, the cash bond that Baxter posted was to secure her subsequent court attendance. She did thereafter appear in court as required. Therefore, the bond could not have been properly forfeited even if the contempt adjudication was proper.

Further yet, Sincere Client Care Services, LLC, is the garnishee and debtor under the judgment pro confesso. Baxter is not named as a debtor

therein. Even if this were a valid judgment pro confesso, Baxter is not a debtor thereunder, and her cash bond could not lawfully be forfeited toward satisfaction of it.

## CONCLUSION

The judgment denying the motion to reopen and vacate the judgment pro confesso against Sincere Client Care Services, LLC, is **REVERSED**. The judgment ordering forfeiture of Andrea Baxter's cash bond is **REVERSED**. The implied adjudication of contempt against Baxter as a result of her noncompliance with the subpoena for the judgment debtor examination is **VACATED**. This case is **REMANDED** for further proceedings in accordance with this opinion. Costs of this appeal are taxed to the appellee, Employers Mutual Casualty Company.

**ELLENDER, J., concurring.**

I concur in the results. Additionally, the failure of the garnishee, Sincere Client Care, to timely respond to garnishment interrogatories, and make appearances at hearings, should have some consequences. On remand, I believe the trial court should also consider whether Sincere Client Care is responsible for reasonable attorney fees and costs incurred by the judgment creditor, Employers Mutual, as provided for in La. C.C.P. art. 2413(C), and be made to pay for the wages, salaries, and commissions, if any, that would have been subject to seizure had Sincere Client Care timely responded to the garnishment interrogatories.

1